Eric H. Gibbs (State Bar No. 178658)
ehg@girardgibbs.com
Dylan Hughes (State Bar No. 209113)
Geoffrey A. Munroe (State Bar No. 228590)
**GIRARD GIBBS LLP**
601 California Street, Suite 1400
San Francisco, California 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

Melissa M. Harnett (State Bar No. 164309)
mharnett@wcclaw.com
Gregory B. Scarlett (State Bar No. 131486)
**WASSERMAN, COMDEN & CASSELMAN, L.L.P.**
5567 Reseda Boulevard, Suite 330
Post Office Box 7033
Tarzana, California 91357-7033
Telephone: (818) 705-6800
Facsimile: (818) 345-0162

Attorneys for Individual and Representative
Plaintiff Carlos Collado

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS COLLADO, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TOYOTA MOTOR SALES, U.S.A., INC., a California corporation,<br><br>Defendant. | Case No. 2:09-cv-03087-R-RC<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT TOYOTA'S MOTION TO DISMISS WITH PREJUDICE**<br><br>Date: July 20, 2009<br>Time: 10:00 a.m.<br>Judge: Hon. Manuel L. Real |

## TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................1

II.    LEGAL STANDARD ......................................................................3

III.   SUMMARY OF PLAINTIFF'S FACTUAL ALLEGATIONS ..............................3

IV.    PLAINTIFF HAS STATED A CLAIM AGAINST TOYOTA FOR
       VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT........................6

       A.   Plaintiff Has Pled Facts Giving Rise To A Duty To Disclose The HID
            Headlight System Defect. .....................................................6

       B.   The HID Headlight System Defect Is Material Because It Affects Consumer
            Safety And Would Be Considered Important To A Reasonable Consumer. ......8

       C.   Toyota's Efforts To Distinguish *Falk* Are Unpersuasive. ...............11

V.     PLAINTIFF HAS STATED A CLAIM AGAINST TOYOTA FOR
       VIOLATION OF THE UNFAIR COMPETITION LAW. ………………….…12

       A.   Plaintiff States A Claim Under Each Prong of the UCL....................12

            1.   Toyota's Conduct Violates The UCL's Unlawful Prong. ............12

            2.   Toyota's Conduct Violates The UCL's Fraudulent Prong............13

            3.   Toyota's Conduct Violates The UCL's Unfair Prong................14

VI.    PLAINTIFF'S ALLEGATIONS SATISFY THE PLEADING STANDARD OF
       RULE 9(b)………………………………………………………………14

VII.   PLAINTIFF HAS STANDING TO ASSERT CLAIMS UNDER THE UCL
       AND CLRA. …………………………………………………………..15

VIII.  CONCLUSION...................................................................17

PLAINTIFF'S OPPOSITION TO DEFENDANT TOYOTA'S MOTION TO DISMISS

TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*
  129 S. Ct. 1937 (2009) .................................................................................3

*Baggett v. Hewlett-Packard Co.*
  582 F. Supp. 2d 1261 (C.D. Cal. 2007).......................................................15

*Bardin v. DaimlerChrysler Corp.*
  136 Cal. App. 4th 1255 (2006).....................................................................10

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007) ......................................................................................3

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*
  20 Cal. 4th 163 (1999)..................................................................................12

*Clemens v. DaimlerChrysler Corp.*
  534 F.3d 1017 (9th Cir. 2008).....................................................................14

*Clothesrigger, Inc. v. GTE Corp.*
  191 Cal. App. 3d 605 (1987)........................................................................16

*Daugherty v. American Honda Motor Co., Inc.*
  144 Cal. App. 4th 824 (2006)..........................................................6, 8, 10, 13

*Diamond Multimedia Systems v. Superior Court*
  19 Cal.4th 1036 (1999).................................................................................16

*Engalla v. Permanente Medical Group, Inc.*
  15 Cal. 4th 951 (1997)..............................................................................8, 10

*Falk v. General Motors, Corp.*
  496 F. Supp. 2d 1088 (N.D. Cal. 2007) .................................................passim

*In re Apple & AT&TM Antitrust Litig.*
  596 F. Supp. 2d 1288 (N.D. Cal. 2008) ..................................................11, 15

PLAINTIFF'S OPPOSITION TO DEFENDANT TOYOTA'S MOTION TO DISMISS

*In re Cal. Title Ins. Antitrust Litig.*
2009 U.S. Dist. LEXIS 43323 (N.D. Cal. 2009).........................................................12

*In re Gilead Scis. Sec. Litig.*
536 F.3d 1049 (9th Cir. 2008)..............................................................................3

*In re Pizza Time Theatre Sec. Litigation*
112 F.R.D. 15 (N.D. Cal. 1986) ...........................................................................16

*In re Tobacco II Cases*
46 Cal. 4th 298 (2009)...............................................................................13, 15

*Kearns v. Ford Motor Co.*
2009 U.S. App. LEXIS 12289 (9th Cir. 2009)........................................................15

*Linear Technology Corp. v. Applied Materials, Inc.*
152 Cal. App. 4th 115 (2007)...............................................................................13

*Mazza v. Am. Honda Motor Co.*
254 F.R.D. 610 (C.D. Cal. 2008) ..........................................................................17

*McKell v. Washington Mutual, Inc.*
142 Cal. App. 4th 1457 (2006).............................................................................14

*Mourning v. Smithkline Beecham Corp.*,
2009 U.S. Dist. LEXIS 25894 (N.D. Cal. 2009)......................................................14

*In re OnStar Contract Litig.*
600 F. Supp. 2d 861 (E.D. Mich. 2009) ..............................................................9, 11

*OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.*
157 Cal. App. 4th 835 (2007).............................................................................7

*Oestreicher v. Alienware Corp.*
544 F. Supp. 2d 964 (N.D. Cal. 2008) .......................................................6, 8, 10, 11

*Parkinson v. Hyundai Motor Am.*
2008 U.S. Dist. LEXIS 101098 (C.D. Cal. 2008)............................................8, 11, 16

iii

*Rush v. Whirlpool Corp.*
   2008 U.S. Dist. LEXIS 17210 (W.D. Ark. 2008) ......................................................7, 11

*Stickrath v. Globalstar, Inc.*
   2008 U.S. Dist. LEXIS 12190 (N.D. Cal. 2008)......................................................7, 11

*Tieman v. Red Top Cab Company*
   117 Cal. App. 40 (1931)……………………………………………..……………..10

*Watts v. Allstate Indem. Co.*
   2009 U.S. Dist. LEXIS 26618 (E.D. Cal. 2009) ..........................................................14

*Williams v. Gerber Prods. Co.*
   523 F.3d 934 (9th Cir. 2008) ....................................................................................3

**Statutes**

Cal. Civ. Code § 1780 ..............................................................................................15

Cal. Bus. Prof. Code § 17200 ..................................................................................12

Cal. Bus. & Prof. Code § 17204 ..............................................................................15

PLAINTIFF'S OPPOSITION TO DEFENDANT TOYOTA'S MOTION TO DISMISS

## I.    __INTRODUCTION__

Plaintiff alleges that certain 2006-2007 Prius vehicles, like the one he purchased, are equipped with high-intensity discharge (HID) headlights that sporadically stop working while the vehicle is being driven, endangering the vehicle's occupants as well as others sharing the road.  Toyota has long been aware of this systematic problem, which arises from a defect in the Prius's HID Headlight System as a whole rather than just the bulbs,[1] but has neither alerted consumers of the problem or recalled the vehicles to fix the HID Headlight System defect.

A failure to disclose a safety-related product defect is plainly actionable under the consumer protection statutes pled in Plaintiff's complaint.  Toyota therefore seeks to elude settled California law, and gain an early dismissal of Plaintiff's lawsuit, by arguing that Plaintiff has not alleged an unreasonable safety risk.  In making that argument, Toyota neglects to inform the Court that, as Plaintiff has recently learned, the National Highway Traffic Safety Administration (NHTSA) has deemed the safety risk to consumers and the public sufficiently serious to begin an investigation into the problem. (*See* Plaintiff's Request for Judicial Notice, Ex. A.)

Also in furtherance of its argument that Plaintiff has not established an unreasonable safety risk, Toyota attempts to recast the allegations of Plaintiff's complaint.  According to Toyota, Plaintiff is alleging that Toyota "fail[ed] to disclose that HID headlights could burn out," and that the "real issue in this case… is that Plaintiff is unhappy that his HID headlights did not last longer."  (Mot. at 1-2.)  Toyota then proceeds to analyze *these* allegations, rather than the allegations Plaintiff actually pled, and comes to the conclusion that "Toyota had no duty to disclose that HID headlights could burn out."  (Mot. at 7.)  Toyota's entire motion to dismiss is premised on its repeated attempts to trivialize Plaintiff's allegations as nothing more than an unhappy customer with a burned-out bulb:

---

[1]    The HID Headlight System consists of an electronic control unit, a headlight assembly power circuit, electronic ballasts, and high-intensity discharge bulbs.

1

- "Plaintiff simply cannot contend, with a straight face that absent disclosure by a manufacturer, a reasonable consumer would not know that a headlight will eventually need replacement." (Mot. at 13.)

- "Plaintiff has not and cannot allege that headlight failure is beyond the common and expected experience of drivers… such risk is present in any car with any headlight." (Mot. at 13-14.)

- "Plaintiff simply cannot assert that absent disclosure by Toyota, consumers are unaware that HID headlights would burn out at some point at time." (Mot. at 15.)

- "Plaintiffs cannot legitimately argue that Toyota's failure to disclose that HID headlights will burn out is material." (Mot. at 15-16.)

Of course, Plaintiff did not merely suffer a random burned-out bulb and is not claiming that Toyota should have told him and other Prius owners that headlights can burn out. Instead, Plaintiff alleges that Toyota had a duty to disclose that the headlights in Prius vehicles suffer from a far more unusual and dangerous condition: they repeatedly and unexpectedly shut off while the vehicle is being driven. These intermittent headlight failures are dangerous precisely because, unlike a burned-out bulb, they are repeated, erratic, and difficult to detect through routine inspections. While the headlights may appear to be working normally upon inspection, they will inexplicably shut off during use, only to turn back on again a short time later and again appear to be working normally. And even when Prius owners finally realize on their own that their headlights are repeatedly shutting off, and take their vehicles in for costly repairs, Toyota replaces all or part of the HID Headlight System with equally defective parts, resulting in more intermittent headlight failures down the road.

It should be obvious, as it was to the hundreds of consumers that have lodged complaints with NHTSA, that having one's headlights repeatedly and unexpectedly shut off without explanation poses a serious safety risk. Toyota had a duty to disclose this safety-related defect to its customers, but chose instead to conceal the problem—an approach that Toyota continues in its Motion to Dismiss by attempting to characterize

2

the problem as nothing more than a common, burned-out light bulb.  When the factual allegations of Plaintiff's complaint are analyzed, however, it is apparent that Plaintiff has stated a claim against Toyota under both the Consumers Legal Remedies Act (CLRA) and Unfair Competition Law (UCL) for failure to disclose material, safety-related facts about its Prius vehicles.

## II.  LEGAL STANDARD

In evaluating Toyota's motion to dismiss, the allegations of Plaintiff's complaint must be accepted as true and construed in the light most favorable to plaintiffs.  *In re Gilead Scis. Sec. Litig*., 536 F.3d 1049, 1055 (9th Cir. 2008).  That is particularly crucial here, as the facts alleged in Plaintiff's complaint differ markedly from the facts as Toyota presents them in its motion.  *See also Williams v. Gerber Prods. Co*., 523 F.3d 934, 938 (9th Cir. 2008) ("The motion to dismiss is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case.")

Toyota's motion to dismiss should be granted only if the Court finds Plaintiff has not pled "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

## III.  SUMMARY OF PLAINTIFF'S FACTUAL ALLEGATIONS

Plaintiff alleges that 2006 and 2007 Prius vehicles suffer from a dangerous safety defect that Toyota has concealed from its customers in violation of California consumer protection law.  (*See* Compl., ¶¶ 1-3.)  Specifically, the vehicles are factory installed with high-intensity discharge (HID) headlights that sporadically stop working while the vehicle is being driven.  (*Id.*, ¶ 2.)  Plaintiff alleges that this is because of an inherent defect in the "HID Headlight System" installed in 2006-2007 Prius vehicles, which includes a computer that controls the system, a headlight assembly power circuit,

PLAINTIFF'S OPPOSITION TO DEFENDANT TOYOTA'S MOTION TO DISMISS

electronic ballasts, and high-intensity discharge bulbs, and is supposed to function to illuminate the road in front of the driver.  (*See id.*, ¶¶ 10-11, 13.)

The defect in the HID Headlight System presents an unreasonable safety hazard because, when one or both headlights unexpectedly shut off while the vehicle is being driven, it increases the risk of accidents.  (Compl., ¶ 13.)  During that time, the driver's ability to discern obstacles in the road is compromised, as is the vehicle's visibility to other drivers and to pedestrians.  (*See id.*)

Unlike a headlight failure from a burned-out bulb, the headlight failures in Prius vehicles are repeated, erratic, and difficult to detect.   The headlights on Prius vehicles will stop working at random times and for differing durations, and then will start working again a short time later.  (Compl. ¶¶ 11; 24.)  Because the headlights fail only sporadically, it is particularly difficult for Prius owners or service personnel to detect. (*Id.*, ¶ 11.)  A Prius's headlights may be working when the owner or a technician inspects the car, and then suddenly stop working while the vehicle is being driven.  (*See id.*; ¶¶ 11, 25.)  As a result, Prius owners will often drive around for days, weeks, or months with the dangerous condition, unaware that their headlights are shutting off on occasion. (*Id.*, ¶¶ 2, 24.)  Even after a Prius owner notices a problem, because the problem appears to be only temporary, it can remain unaddressed for weeks or months. For example, when representative plaintiff Carlos Collado first noticed that his right front headlight was not working, he took his Prius to a Toyota dealership, only to be told that the technician could not duplicate the failure, and therefore could not fix it.  (*Id.*, ¶¶ 24-25.)

While a burned-out bulb typically can be easily diagnosed and repaired (and even avoided altogether through routine maintenance), the HID Headlight Defect cannot be reliably diagnosed and repaired.  (Compl., ¶¶ 17-18.)  Consumers end up paying for installation of equally defective HID Headlight System parts that alleviate the problem only temporarily, resulting in repair bills of $1,000 or more and vehicles that still suffer intermittent headlight failures.  (*Id.*, ¶ 18.)  For example, when Mr. Collado's vehicle

PLAINTIFF'S OPPOSITION TO DEFENDANT TOYOTA'S MOTION TO DISMISS

was finally diagnosed with a problem, he was charged approximately $500 to replace the right front ballast, only to again notice intermittent headlight failures less than a year later. (*Id.*, ¶¶ 26-27.) The second time, Mr. Collado was charged over $200 for a new HID bulb, and based on the experiences of other Prius owners, he is likely to continue to have problems with intermittent headlight failure in the future. (*Id.*, ¶¶ 28-29, 18.)

Toyota has long been aware of the HID Headlight System defect, but rather than alerting Prius owners of the safety hazard and correcting it through recalls or repairs, Toyota is concealing the problem. (Compl., ¶ 2.) Toyota knows of the significant risk of intermittent headlight failure in Prius vehicles through the extremely high rate of customer complaints, warranty claims, and sales of (equally defective) replacement parts. (*Id.*, ¶¶ 16.) In addition, since filing his complaint, Plaintiff has learned that the National Highway Traffic Safety Administration notified Toyota that it has received hundreds of reports of Prius headlights shutting off while the vehicles were being driven. (*See* Plaintiff's Request for Judicial Notice, Ex. A.) Yet Toyota still has not notified Plaintiff or other Prius owners—or even its own dealers—of the HID Headlight System defect. (Compl., ¶¶ 17, 19, 23.) Instead, Toyota has tried to give consumers the impression that their headlight problems are unique cases rather than part of a systematic defect. (*Id.,* ¶ 17.) Toyota has even continued that approach in response to this lawsuit, portraying Mr. Collado as victim of nothing more than a prematurely burned-out bulb and a unique instance of a dissatisfied customer. (*See* Mot. at 2, 20.)

As a result of Toyota's failure to disclose the HID Headlight System defect, consumers like Mr. Collado purchased Prius vehicles that they would not have otherwise purchased and that pose an unreasonable risk to their safety. (Compl., ¶¶ 20, 22.) Mr. Collado therefore brings class claims under California's consumer protection laws— namely, the Consumers Legal Remedies Act and Unfair Competition Law—to remedy Toyota's ongoing concealment of a significant safety hazard. (*Id.*, ¶¶ 3, 42-44, 51-52.)

1   **IV.   PLAINTIFF HAS STATED A CLAIM AGAINST TOYOTA FOR**
2   **VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT.**

3       **A.   Plaintiff Has Pled Facts Giving Rise To A Duty To Disclose The HID**
4       **Headlight System Defect.**

5         Plaintiff alleges that Toyota violated the Consumers Legal Remedies Act (CLRA),

6   by failing to disclose that the Prius's HID Headlight System is defective and poses a

7   safety hazard to consumers.  (Compl., ¶¶ 38-44.)  The CLRA is a consumer protection

8   statute that is "liberally construed and applied to promote its underlying purposes, which

9   are to protect consumers against unfair and deceptive business practices and to provide

10  efficient and economical procedures to secure such protection."  Cal. Civ. Code § 1760.

11        A plaintiff states a claim under the CLRA if he alleges that a defendant seller or

12  manufacturer omitted a fact it was obliged to disclose in connection with the sale of a

13  consumer good.  *Daugherty v. American Honda Motor Co., Inc*., 144 Cal. App. 4th 824,

14  835 (2006).  Toyota spends a good deal of time arguing that under the rationale of

15  *Daugherty* it "had no duty to disclose that HID headlights could burn out."  (Mot. at 7-

16  11.)  The question here, however, is whether Toyota had a duty to disclose a known

17  safety issue with its Prius vehicles:  that the headlights sporadically shut off while the

18  vehicle is being driven.  When the appropriate legal analysis is applied to this question, it

19  becomes clear that Toyota had a duty to disclose such highly material, safety-related

20  facts.  *See, e.g., Falk v. General Motors, Corp.*, 496 F. Supp. 2d 1088, 1094 (N.D. Cal.

21  2007) ("*Daugherty* emphasized that an 'unreasonable' safety risk would lead to a duty to

22  disclose."); *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 969 (N.D. Cal. 2008)

23  (recognizing that *Daugherty* created an exception to its holding for "facts relating to

24  product safety").

25        As Toyota acknowledges, citing to *Falk*, 496 F. Supp. 2d at 1095, a duty to

26  disclose arises in four principal conditions:

27      (1)    When the defendant is in a fiduciary relationship with the plaintiff;
28      (2)    When the defendant had exclusive knowledge of material facts not
            known to the plaintiff;

6

(3)     When the defendant actively conceals a material fact from the plaintiffs; and

(4)     When the defendant makes partial misrepresentations but also suppresses some material fact.

(Mot. at 14); *see also OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.*, 157 Cal. App. 4th 835, 859 (2007).

Under the facts set forth in Plaintiff's complaint, Toyota was obliged to disclose to Plaintiff and other Prius buyers that the vehicles' HID headlights sporadically shut off during use (i.e., the HID Headlight System defect) because both the 2nd and 3rd conditions outlined in *Falk* are satisfied.  Plaintiff alleges that Toyota had exclusive knowledge of the HID Headlight System defect.  (Compl., ¶ 16.)  Specifically, Plaintiff alleges that "[o]nly Toyota had access to information about the significant risk of intermittent headlight failure through its dealerships, pre-release testing data, warranty data, customer complaint data, and replacement part sales data." (*Id.*, ¶ 16); *see also Falk*, 496 F. Supp. 2d at 1096-1097 (finding allegations that only the defendant automaker had access to similar aggregate data sufficient to plead exclusive knowledge of a systematic defect); *Rush v. Whirlpool Corp.,* 2008 U.S. Dist. LEXIS 17210, *11 (W.D. Ark. 2008) (same).  Plaintiff also alleges that Toyota actively concealed the HID Headlight System defect by withholding information about the systematic nature of the headlight problems from both consumers and dealers alike, and by providing equally defective replacement parts to its dealers for use in repairs, thus creating the false impression that any problems were unique cases.  (Compl., ¶¶ 17, 25); *see also Falk*, 496 F. Supp. 2d at 1097 (an automaker's replacement of defective parts with the same model can constitute active concealment of a systematic problem); *Stickrath v. Globalstar, Inc.*, 2008 U.S. Dist. LEXIS 12190, *9-11 (N.D. Cal. 2008) ("Plaintiffs' allegations that Defendant knew of material defects but did not disclose them to potential customers are sufficient to allege a duty to disclose under an active concealment theory.")

PLAINTIFF'S OPPOSITION TO DEFENDANT TOYOTA'S MOTION TO DISMISS

1

2

**B.**     **The HID Headlight System Defect Is Material Because It Affects Consumer Safety And Would Be Considered Important To A Reasonable Consumer.**

3

4     Toyota argues that both the 2nd and 3rd conditions outlined in *Falk* "require the

5   existence of a material fact that absent disclosure would not have been known to a

6   purchasing consumer." (Mot. at 15.) A material fact is one that, if disclosed, would

7   cause a reasonable consumer to behave differently. *Falk*, 496 F. Supp. 2d at 1095; *see*

8   *also Oestreicher*, 544 F. Supp. 2d at 971 ("This court agrees that materiality should be

9   judged by *Falk's* standards, which uses the expectations of a reasonable consumer and

10  his behavior."); *Parkinson v. Hyundai Motor Am.*, 2008 U.S. Dist. LEXIS 101098, *41

11  (C.D. Cal. 2008) ("Materiality is determined from the perspective of the reasonable

12  consumer").

13     Whether or not a fact is material is thus generally a question of fact not suitable

14  for resolution at the pleadings stage. *See Engalla v. Permanente Medical Group, Inc.*,

15  15 Cal. 4th 951, 977 (1997). The exception is when a fact "is so obviously unimportant

16  that the jury could not reasonably find that a reasonable man would have been

17  influenced by it.'" *Id.* Thus, in *Daugherty*, the Court granted a defendants' motion to

18  dismiss upon finding the fact that an "engine might, in the fullness of time, eventually

19  dislodge the front balancer shaft oil seal and cause an oil leak" to be immaterial as a

20  matter of law. *See* 144 Cal. App. 4th at 838. Because the court found the fact to be

21  consistent with what a reasonable consumer would expect, its nondisclosure could not,

22  as a matter of law, have deceived consumers or otherwise influenced their behavior. *See*

23  *id.*

24     Toyota claims that Plaintiff has alleged just such an "obviously unimportant" fact:

25  that the Prius's headlights might, in the fullness of time, eventually burn out and need to

26  be replaced. Toyota argues that this fact is immaterial as a matter of law because a

27  reasonable consumer knows that "HID headlights would burn out at some point in time"

28  and that "a headlight will eventually need replacement." (Mot. at 13, 15.)

8

PLAINTIFF'S OPPOSITION TO DEFENDANT TOYOTA'S MOTION TO DISMISS

Again, Toyota misstates the issue before the Court.  It is not the fact that the Prius's headlights might burn out that Plaintiff claims was material and ought to have been disclosed to him, but the fact that the Prius's headlights sporadically stop working while the vehicle is being driven.  (*See* Compl., ¶¶ 1, 11.)  This highly unusual behavior by an essential safety feature of modern vehicles is neither known nor expected by consumers.  (*See id.*, ¶¶ 13-15.)  Plaintiff and other reasonable consumers like him would not have purchased a Prius with HID headlights had Toyota told them of this dangerous defect.  (*Id.*, ¶ 20, 22); *see Cirulli v. Hyundai Motor Company*, SACV 08-0854-AG [Docket No. 52], slip op. at 5-6 (C.D. Cal. June 12, 2009) (allegations that the plaintiff and class would not have purchased their vehicles had they known of the undisclosed sub-frame defect successfully established materiality for the purposes of a motion to dismiss).

Where, as here, a defendant manufacturer has failed to disclose a fact that bears directly on the safety of its product, it should go without saying that a reasonable consumer would consider that fact to be material.  As might be expected, courts have overwhelmingly agreed with such a common sense principle.  Thus, when the plaintiffs in *Falk* alleged that General Motors had not disclosed that its speedometers were prone to unexpected and intermittent failures, creating an increased risk of traveling at unsafe speeds and of traffic accidents, the court found that plaintiffs had adequately pled materiality.  *See*  496 F. Supp. 2d at 1096 ("That a speedometer is prone to fail and to read a different speed than the vehicle's actual speed, even a difference of ten miles per hour, would be material to the reasonable consumer, driver and passenger.")  Similarly, when plaintiffs in the multidistrict *In re Onstar Contract Litigation* alleged that Honda violated the CLRA by failing to disclose that the OnStar safety system would soon stop working due to changes in the telecommunications industry, the MDL court denied Honda's motion to dismiss.  *See In re OnStar Contract Litig.*, 600 F. Supp. 2d 861, 870 (E.D. Mich. 2009).  Citing *Falk* for the principle that Honda had an obligation to disclose material facts under the four circumstances outlined above, the MDL court

PLAINTIFF'S OPPOSITION TO DEFENDANT TOYOTA'S MOTION TO DISMISS

1    concluded that the plaintiffs' allegations concerning safety were sufficient to survive a

2    motion to dismiss.  *See id.* at 869-870.  Even those courts who have not found

3    materiality, and have therefore dismissed plaintiffs' omission-based CLRA claims at the

4    pleading stage, have gone out of their way to indicate that the undisclosed facts did not

5    concern consumer safety.  *See Daugherty,* 144 Cal. App. 4th at 836 ("The complaint is

6    devoid of factual allegations showing any instance of physical injury or any safety

7    concerns posed by the [undisclosed] defect."); *Bardin v. DaimlerChrysler Corp*., 136

8    Cal. App. 4th 1255, 1270 (2006) (noting that "Plaintiffs did not allege any personal

9    injury or safety concerns" related to the undisclosed fact that the defendant automaker

10   used tubular steel in its exhaust manifolds instead of the more durable cast iron);

11   *Oestreicher*, 544 F. Supp. 2d at 971-973 (finding that, unlike *Falk*, there plaintiff had

12   made no showing of safety considerations, and declining to extend a manufacturer's

13   duty to disclose to "a latent *non-safety* related defect in its product") (emphasis

14   supplied).

15        Here, Plaintiff has adequately plead that the undisclosed HID Headlight System

16   defect *is* safety-related and poses an unreasonable risk to consumers, as well as to other

17   members of the public.  (*See* Compl., ¶¶1, 11-13); *see also Tieman v. Red Top Cab*

18   *Company*, 117 Cal. App. 40, 42-43 (1931) ("the purpose of lighted headlights is not only

19   to warn a pedestrian of a vehicle's approach, but is also to enable its operator to see the

20   pedestrian").  And just as the court in *Falk* found that "[c]ommon experience supports

21   plaintiffs' claims that a potential car buyer would view as material a defective

22   speedometer," here too common experience supports Plaintiff's claim that Prius buyers

23   would view as material headlights that sporadically stop working while the vehicle is

24   being driven.  *Falk*, 496 F. Supp. 2d at 1096.  Intermittent headlight failure is clearly not

25   an "obviously unimportant" fact of the kind that can be found immaterial to a reasonable

26   consumer at the pleading stage.  *Engalla*, 15 Cal. 4th at 977.   Plaintiff has set forth

27   facts sufficient for a jury to reasonably find that Toyota failed to disclose a material fact

28   to Prius purchasers, and therefore has stated a claim against Toyota under the CLRA.

C.   **Toyota's Efforts To Distinguish *Falk* Are Unpersuasive.**

Toyota attempts to distance its conduct from that addressed in *Falk*, arguing that the plaintiffs in that case adequately alleged an undisclosed defect that poses an unreasonable safety risk, but the plaintiff in this case has not.  According to Toyota, "the facts of this case are distinguishable from those in *Falk*…  The defect at issue in *Falk* concerned faulty speedometers that, after the warranty period, become erratic and failed to identify vehicle speed."  (Mot. at 11-12.)  Ironically, this case can be described in almost identical terms:  The defect at issue in this case concerns a faulty HID Headlight System that, during and after the warranty period, becomes erratic and fails to consistently illuminate during the vehicle's operation.  If anything, headlights that operate erratically pose *more* of a safety risk than does a speedometer that operates erratically.  Toyota's attempt to distinguish the facts of this case from those of *Falk* does not hold up to scrutiny.  The analysis of *Falk* applies to the facts of this case, and confirms that Plaintiff has stated a claim under the CLRA.

Toyota further endeavors to avoid *Falk's* application by labeling it a "highly criticized decision," whose holdings have "not gained wide acceptance."  (Mot. at 11-12.)  To the contrary, numerous courts have embraced *Falk's* analysis.  *See, e.g., Cirulli*, SACV 08-0854-AG, slip op. at 5-6; *OnStar*, 600 F. Supp. 2d at 869-870 (denying defendant automaker's motion to dismiss CLRA and UCL claims in multidistrict litigation); *Parkinson*, 2008 U.S. Dist. LEXIS 101098, at *40-41; *In re Apple & AT&TM Antitrust Litig.*, 596 F. Supp. 2d 1288, 1310-1312 (N.D. Cal. 2008); *Rush*, 2008 U.S. Dist. LEXIS 17210, at *10-12 (denying defendant manufacturer's motion to dismiss CLRA claims); *Stickrath*, 2008 U.S. Dist. LEXIS 12190, at *5-11.

In fact, the primary case that Toyota relies upon to support its assertion, *Oestreicher v. Alienware*, follows the analysis set forth by *Falk*.  *See* 544 F. Supp. 2d at 970-971 (citing the four circumstances set out by *Falk* where a failure to disclose can violate the CLRA); *id.* at 971 (agreeing that materiality should be judged by *Falk's* standards).  In applying that analysis to different facts, however, *Oestreicher* simply

PLAINTIFF'S OPPOSITION TO DEFENDANT TOYOTA'S MOTION TO DISMISS

reached a different conclusion. It found that "the safety consideration was integral to [*Falk's*] finding that the non-disclosed information was material," and so concluded that under the facts before it, which involved no safety considerations, the plaintiff had failed to state a claim under the CLRA. *Id.* at 971. So while *Oestreicher* declined to read *Falk* as obliging a manufacturer to disclose a "latent non-safety related defect," nothing in the case undermines *Falk's* conclusion that a failure to disclose a safety-related defect is actionable under the CLRA. *See id.* at 972 ("the plaintiffs in *Smith* argued that the ignition-lock defect in issue was safety related, making the case akin to *Falk*") (discussing *Smith v. Ford Motor Co.*, No. 06-00497-MMC (N.D. Cal. March 14, 2008)).

## V.   **PLAINTIFF HAS STATED A CLAIM AGAINST TOYOTA FOR VIOLATION OF THE UNFAIR COMPETITION LAW.**

### A.   **Plaintiff States A Claim Under Each Prong of the UCL.**

The Unfair Competition Law (UCL) prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. Prof. Code § 17200. Accordingly, Plaintiff's complaint states a claim under the UCL if it establishes that Toyota's conduct is *either* unlawful (i.e., forbidden by law), unfair (i.e., the harm to consumers outweighs any legitimate competitive benefit), or fraudulent (i.e., is likely to deceive members of the public). *See In re Cal. Title Ins. Antitrust Litig.,* 2009 U.S. Dist. LEXIS 43323, *30 (N.D. Cal. 2009). Plaintiff has alleged that Toyota's conduct violates all three prongs of the UCL, but need only establish one to state a claim. (*See* Compl., ¶¶ 45-52.)

#### 1.   **Toyota's Conduct Violates The UCL's Unlawful Prong.**

The UCL's unlawful prong "borrows" violations of other laws and treats them as independently actionable under the UCL. *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999). Toyota's violation of the CLRA thus also constitutes an unlawful practice actionable under the UCL. *See Falk,* 496 F. Supp. 2d at 1098 ("[P]laintiffs successfully plead that GM violated the CLRA by breaching its duty to disclose information about its defective speedometers. Therefore … GM has committed an unlawful practice under the UCL.")

PLAINTIFF'S OPPOSITION TO DEFENDANT TOYOTA'S MOTION TO DISMISS

## 2.  <u>Toyota's Conduct Violates The UCL's Fraudulent Prong.</u>

In spite of its name, the fraudulent prong of the UCL is "distinct from common law fraud. A common law fraudulent deception must be actually false, known to be false by the perpetrator and reasonably relied upon by a victim who incurs damages. None of these elements are required to state a claim for injunctive relief under the UCL. This distinction reflects the UCL's focus on the defendant's conduct, rather than the plaintiff's damages, in service of the statute's larger purpose of protecting the general public against unscrupulous business practices." *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009) (internal citations and quotation marks omitted).

To establish that Toyota's conduct constituted a fraudulent practice under the UCL, Plaintiff need only show that "members of the public are likely to be deceived." *Daugherty*, 144 Cal. App. 4th at 838. Common sense tells us that selling a vehicle with optional HID headlights without disclosing that those headlights sporadically stop working during use is likely to deceive consumers. (*See* Compl., ¶ 14 (a reasonable consumer expects that a vehicle includes safe and functional headlights and that a automaker will not sell vehicles with known safety defects without disclosing that defect)); *see also Falk* 496 F. Supp. 2d at 1098 (where an automaker has a duty to disclose the existence of a known safety defect to its customers, yet fails to follow through with it, "members of the public would very likely be deceived"); *contrast Daugherty*, 144 Cal. App. 4th at 838 (members of the public are not likely to be deceived by automaker's failure to disclose a non-safety related defect that it had no obligation to disclose).

Ultimately, whether or not Toyota's business practices are deceptive is a question of fact that requires consideration and weighing of evidence from both sides, and thus not ordinarily suitable for decision on demurrer. *See Linear Technology Corp. v. Applied Materials, Inc*., 152 Cal. App. 4th 115, 134-35 (2007). Consumer surveys, anecdotal evidence, and expert testimony regarding consumer assumptions are often integral to the court's ultimate determination. *See Clemens v. DaimlerChrysler Corp.,*

PLAINTIFF'S OPPOSITION TO DEFENDANT TOYOTA'S MOTION TO DISMISS

534 F.3d 1017, 1026 (9th Cir. 2008). Because it is far from "impossible" that plaintiff will be able to present such evidence to support its allegation that a reasonable consumer was likely to be deceived by Toyota's conduct, this is not one of those "rare situations" where granting a motion to dismiss is appropriate. *Williams*, 523 F.3d at 939.

### 3. **Toyota's Conduct Violates The UCL's Unfair Prong.**

"A business practice is unfair within the meaning of the UCL if it violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." *McKell v. Washington Mutual, Inc.*, 142 Cal. App. 4th 1457, 1473 (2006). To determine whether a business practice is unfair, the court must review the evidence from both parties and weigh any legitimate utility of the practice against the harm to consumers; this decision "cannot usually be made on demurrer." *See id.*

Here, Plaintiff has alleged practices, including the sale of Prius vehicles with optional HID headlights known to sporadically stop working and the use of equally defective parts to "repair" the Prius's HID Headlight System, that upon review of all the evidence, very well may prove to be contrary to public policy, immoral, unethical, unscrupulous, and/or substantially injurious to consumers. *See Mourning v. Smithkline Beecham Corp.*, 2009 U.S. Dist. LEXIS 25894, *12 (N.D. Cal. 2009) ("Failing to provide safety information is a practice that violates public policy."); *see also Watts v. Allstate Indem. Co.,* 2009 U.S. Dist. LEXIS 26618, *29-30 (E.D. Cal. 2009) (court could not conclude, as a matter of law, that defendants' conduct was fair where plaintiff alleged that defendants put consumers at risk by interfering with auto repair procedures).

## VI. **PLAINTIFF'S ALLEGATIONS SATISFY THE PLEADING STANDARD OF RULE 9(b).**

Rule 9(b) of the Federal Rules of Civil Procedure requires a party to "state with particularity the circumstances constituting fraud or mistake." Where, as here, a party alleges consumer fraud under the UCL and CLRA, the same requirement of pleading with particularity applies. *Kearns v. Ford Motor Co.*, 2009 U.S. App. LEXIS 12289,

PLAINTIFF'S OPPOSITION TO DEFENDANT TOYOTA'S MOTION TO DISMISS

1  \*10 (9th Cir. 2009).  Toyota argues that Plaintiff has not met this pleading standard, but
2  that argument is not properly directed at the omissions-based claim that Plaintiff pled.
3  (*See* Compl., ¶¶ 38-52 (UCL and CLRA claims based on Toyota's failure to disclose
4  material facts).)

5  UCL and CLRA claims based on an omission or concealment "can succeed
6  without the same level of specificity required by a normal fraud claim."  *Baggett v.*
7  *Hewlett-Packard Co*., 582 F. Supp. 2d 1261, 1267 (C.D. Cal. 2007).  This is because a
8  plaintiff pursuing an omissions-based claim will "not be able to specify the time, place,
9  and specific content of an omission as precisely as would a plaintiff in a false
10  representation claim." *Id.* (*citing Falk*, 496 F. Supp. 2d at 1098-99).  "Because such a
11  plaintiff is alleging a failure to act instead of an affirmative act, he cannot point out the
12  specific moment when the defendant failed to act." *Id.*  Plaintiff's failure to specify the
13  time and place of Toyota's omissions will therefore not bar his claims.  *In re Apple &*
14  *AT&TM Antitrust Litig*., 596 F. Supp. 2d at 1310 (citing *Falk*, 496 F. Supp. 2d at 1099).
15  Instead, because Plaintiff has pleaded the substance of the omissions, the identity of the
16  party responsible for the omissions, and the injuries resulting from the omissions,
17  Plaintiff has pled with sufficient particularity.  *Id.*

18  **VII.  PLAINTIFF HAS STANDING TO ASSERT CLAIMS UNDER THE UCL**
19  **AND CLRA.**

20  Both the UCL and CLRA include standing requirements that require a named
21  plaintiff to demonstrate injury "as a result of" the defendant's alleged conduct.  Cal. Civ.
22  Code § 1780(a); Cal. Bus. & Prof. Code § 17204.  Toyota contends that Mr. Collado has
23  not met these standing requirements, and suggests that because he is a New York
24  resident, he could not have suffered injury "as a result of" Toyota's conduct in
25  California.  (Mot. at 16-18.)

26  The California Supreme Court recently clarified how a named plaintiff
27  demonstrates injury "as a result of" a defendant's misrepresentation or non-disclosure.
28  *See In re Tobacco II Cases,* 46 Cal. 4th at 326.  Under *Tobacco*, Mr. Collado establishes

1    standing if he can show that, in the absence of Toyota's alleged non-disclosure, he "in

2    all reasonable probability" would not have engaged in the injury-producing conduct—in

3    this case, his purchase of a Prius vehicle with optional HID headlights.  *Id.*  In addition,

4    when the non-disclosure is shown to be material, a presumption arises that Plaintiff

5    satisfies this standing/reliance requirement.  *Id.* at 326-327.  Based on Mr. Collado's

6    allegations that he would not have purchased his Prius had Toyota disclosed the HID

7    Headlight System defect to him, and the showing of materiality discussed previously,

8    Plaintiff has established standing to bring a claim under the UCL and CLRA.  (*See*

9    Compl., ¶22.)

10          In this world of omnipresent interstate commerce, the fact that Mr. Collado has

11   been injured by a California-based corporation, in turn giving rise to claims under

12   California's consumer protection statutes, should not be surprising to Toyota.  The

13   decisions Toyota makes from its California headquarters, including its decision to

14   conceal a known safety defect, do not just affect California consumers; they emanate

15   throughout the country and affect all states' consumers.  (*See* Compl., ¶¶ 7-8.)

16   California courts have consistently "recognized the importance of extending state-

17   created remedies," such as those available under the UCL and CLRA, "to out-of-state

18   parties harmed by wrongful conduct occurring in California.  *Diamond Multimedia*

19   *Systems v. Superior Court*, 19 Cal.4th 1036, 1064 (1999) (citing *Clothesrigger, Inc. v.*

20   *GTE Corp.*, 191 Cal. App. 3d 605, 615 (1987), where the court applied California

21   consumer protection law to out-of-state consumers).  "California has a strong interest in

22   the allegedly fraudulent conduct of its corporations… and in protecting its residents *and*

23   *others* from such fraud."  *In re Pizza Time Theatre Sec. Litigation*, 112 F.R.D. 15, 18

24   (N.D. Cal. 1986) (emphasis supplied).  When that allegedly fraudulent conduct emanates

25   throughout the country and affects consumers of other states, like Mr. Collado,

26   California court thus have not hesitated to afford those states' residents a remedy under

27   its consumer protection laws.  *See, e.g, Parkinson*, 2008 U.S. Dist. LEXIS 101098, at

28   *44-50 (applying UCL and CLRA to out-of-state consumers in a case alleging that

---

16

PLAINTIFF'S OPPOSITION TO DEFENDANT TOYOTA'S MOTION TO DISMISS

California-based Hyundai failed to disclose material information); *Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 623 (C.D. Cal. 2008) (also applying UCL and CLRA to out-of state consumers, where California-based Honda was alleged to have omitted material facts concerning its Collision Mitigating Breaking System).

Finally, if despite the preceding authority, the Court concludes that Mr. Collado does not have standing to seek a remedy under California's consumer protection laws, it should grant leave to amend, so that Mr. Collado can assert claims under New York's consumer protection law and/or so that a plaintiff who does have standing to proceed under California's consumer protection laws can be substituted.

## VIII. <u>CONCLUSION</u>

For the reasons stated above, Plaintiff respectfully request that the Court deny Toyota's motion to dismiss in its entirety.

DATED: July 6, 2009   Respectfully submitted,

          **GIRARD GIBBS LLP**

          By:  /s/ Eric H. Gibbs

          Dylan Hughes
          Geoffrey A. Munroe
          601 California Street, 14th Floor
          San Francisco, California 94108
          Telephone: (415) 981-4800
          Facsimile: (415) 981-4846

          Melissa M. Harnett
          Gregory B. Scarlett
          **WASSERMAN, COMDEN & CASSELMAN, L.L.P.**
          5567 Reseda Boulevard, Suite 330
          Tarzana, California 91357-7033
          Telephone: (818) 705-6800
          Facsimile: (818) 345-0162

          *Attorneys for Individual and Representative Plaintiff Carlos Collado*

PLAINTIFF'S OPPOSITION TO DEFENDANT TOYOTA'S MOTION TO DISMISS