Michael L. Mallow (*admitted pro hac vice*)
Mark D. Campbell (*admitted pro hac vice*)
Darlene M. Cho (*admitted pro hac vice*)
LOEB & LOEB LLP
10100 Santa Monica Blvd., Suite 2200
Los Angeles, California 90067
310-282-2000

Michael B. Shortnacy (MS-4445)
LOEB & LOEB LLP
345 Park Avenue
New York, New York 10154-1895
212-407-4000

Attorneys for Defendant
Toyota Motor Sales, U.S.A., Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

| | |
|---|---|
| Carlos Collado, Richard Hock, Bill Urban, Enrique Cantu, Paul Bigbie, William Askew, Jacek Pawlowicz, and James Freeman, on behalf of themselves and all others similarly situated, | : <br> : <br> : <br> : |
| Plaintiffs, | : |
| v. | : <br> : |
| Toyota Motor Sales, U.S.A., Inc., a California corporation, | : |
| Defendant. | : |

09-CV-07151 (RJS) (DCF)
ECF CASE

------------------------------------------------------------ X

### DEFENDANT TOYOTA MOTOR SALES, U.S.A., INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT PURSUANT TO FED R. CIV. P. 9(b) & 12(b)(6)

## TABLE OF CONTENTS

<u>Page</u>

TABLE OF AUTHORITIES .................................................................................. ii

I. INTRODUCTION ...................................................................................... 1

II. ARGUMENT ............................................................................................. 4

    A. The Applicable Standard on Motion to Dismiss .................................. 4

    B. California's Consumer Protection Statutes .......................................... 5

    C. The FAC Fails to State a Cause of Action Under California's UCL and CLRA .................................................................................................. 7

        1. Plaintiffs Cannot Rely On Any Law, Other than the CLRA, As the Basis for Any "Unlawful" UCL Claim ............................... 7

        2. The FAC Fails to Allege With Specificity the Representations Allegedly Made by Toyota, or That Plaintiffs Relied on Any Representations As Required By Rule 9(b) ............................... 8

        3. Toyota Had No Duty to Disclose that HID Headlights Might Fail After the Expiration of the Warranty Period Because No Reasonable Consumer Could Have Any Expectation That HID Headlights Would Last Beyond the Warranty Period ............................ 11

        4. The Alleged HID Defect Does Not Pose An Unreasonable Safety Hazard Because It is No More Dangerous Than the Failure of Regular Headlights .............................................. 18

        5. Plaintiffs' Own Allegations Belie the Contention that Toyota Intentionally or Fraudulently Concealed the Alleged HID Defect By Supplying Equally Defective Replacement Parts ............ 22

III. CONCLUSION ....................................................................................... 24

# TABLE OF AUTHORITIES

Page(s)

CASES

Aberdeen v. Toyota Motor Sales, U.S.A., Inc.,
   No. CV 08-1690, slip op. (C.D. Cal. June 23, 2009)...........................................................12

Ashcroft v. Iqbal,
   __U.S.__, 129 S. Ct. 1937 (2009)........................................................................................5

ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,
   493 F.3d 87 (2d Cir. 2007), opinion amended, 275 F.3d 1187 (9th Cir. 2001)........................5

Bank of the West v. Superior Court,
   2 Cal. 4th 1254 (1992) .....................................................................................................5-6

Bardin v. DaimlerChrysler Corp.,
   136 Cal. App .4th 1255 (2006) .....................................................................................Passim

Bell Atl. Corp. v. Twombly,
   550 U.S. 544 (2007)...........................................................................................................4

Buckland v. Threshold Enters., Ltd.,
   155 Cal. App. 4th 798 (2007) .............................................................................................10

Buller v. Sutter Health,
   160 Cal. App. 4th 981 (2008) .......................................................................................Passim

Californians for Disability Rights v. Mervyn's, LLC,
   39 Cal. 4th 223 (2006) ........................................................................................................6

Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,
   20 Cal. 4th 163 (1999) ........................................................................................................6

Chamberlan v. Ford Motor Co.,
   369 F. Supp. 2d 1138 (N.D. Cal. 2005) ..........................................................................11, 17

Clayton v. Landsing Pac. Fund, Inc.,
   No. C 01-03110 WHA, 2002 WL 1058247 (N.D. Cal. May 9, 2002),
   aff'd, 56 F. App'x 379 (9th Cir. 2003)..................................................................................21

Clemens v. DaimlerChrysler Corp.,
   534 F.3d 1017 (9th Cir. 2008) ......................................................................................13, 16

Comm. on Children's Television, Inc. v. Gen. Foods Corp.,
   35 Cal. 3d 197 (1983) .........................................................................................................6

Page(s)

*Consumer Advocates v. Echostar Satellite Corp.,*
113 Cal. App. 4th 1351 (2003) .................................................................................10

*Daugherty v. American Honda Motor Co.,*
144 Cal. App. 4th 824 (2006) ........................................................................ Passim

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.,*
375 F.3d 168 (2d Cir. 2004)........................................................................................ 8-9

*Falk v. General Motors Corp.,*
496 F. Supp. 2d 1088 (N.D. Cal. 2007) ....................................................... Passim

*Farmers Ins. Exch. v. Superior Court,*
2 Cal. 4th 377 (1992) .....................................................................................................6

*Fortaleza v. PNC Fin. Servs. Group, Inc.,*
642 F. Supp. 2d 1012 (N.D. Cal. 2009) ................................................................8

*Freeman v. Time, Inc.,*
68 F.3d 285 (9th Cir. 1995) .......................................................................................10

*Haskell v. Time, Inc.,*
857 F. Supp. 1392 (E.D. Cal. 1994)........................................................................10

*Hoey v. Sony Elecs. Inc.,*
515 F. Supp. 2d 1099 (N.D. Cal. 2007) ........................................................5, 8, 13

*Holloway v. King,*
161 F. App'x 122 (2d Cir. 2005) .............................................................................4

*Hovsepian v. Apple, Inc.,*
No. 08-5788, 2009 WL 2591445 (N.D. Cal. Aug. 21, 2009) ......................... Passim

*In re Tobacco II Cases,*
46 Cal. 4th 298 (2009) ...........................................................................................5, 10

*Johnson v. Mitsubishi Digital Elecs. Am., Inc.,*
578 F. Supp. 2d 1229 (C.D. Cal. 2008) ..............................................................21

*Kearns v. Ford Motor Co.,*
567 F.3d 1120 (9th Cir. 2009) .................................................................................8

*Khoury v. Maly's of California, Inc.,*
14 Cal. App. 4th 612 (1993) ...................................................................................8

Page(s)

Laster v. T-Mobile USA, Inc.,
    407 F. Supp. 2d 1181 (S.D. Cal. 2005), aff'd, 252 F. App'x 777 (9th Cir. 2007),
    cert. denied, 128 S. Ct. 2500 (2008) ..................................................................................10

Long v. Hewlett-Packard Co.,
    No. C 06-02816 JW, 2007 WL 2994812 (N.D. Cal. July 27, 2007),
    aff'd, 316 F. App'x 585 (9th Cir. 2009)..........................................................................13, 17

Morgan v. Harmonix Music Sys., Inc.,
    No. 08-5211, 2009 WL 2031765 (N.D. Cal. July 7, 2009) ........................................ 11-12, 19

Nat'l Util. Serv., Inc. v. Tiffany & Co.,
    No. 07 Civ. 3345 (RJS), 2009 WL 755292 (S.D.N.Y. March 20, 2009) ...................................2

Oestreicher v. Alienware Corp.,
    544 F. Supp. 2d 964 (N.D. Cal. 2008), aff'd, 322 F. App'x 489 (9th Cir. 2009) ............ Passim

Outboard Marine Corp. v. Superior Court,
    52 Cal. App. 3d 30 (1975) ..............................................................................................20

Permpoon v. Wells Fargo Bank Nat'l Ass'n,
    No. CV-09-01140, 2009 WL 3214321 (S.D. Cal. Sept. 29, 2009)...........................................7

Pickern v. Pier 1 Imports, Inc.,
    339 F. Supp. 2d 1081 (E.D. Cal. 2004), aff'd, 457 F.3d 963 (9th Cir. 2006)...........................5

Robertson v. Dean Witter Reynolds, Inc.,
    749 F.2d 530 (9th Cir. 1984) ............................................................................................4

Rombach v. Chang,
    355 F.3d 164 (2d Cir. 2004)..............................................................................................9

Scripps Clinic v. Superior Court,
    108 Cal. App. 4th 917 (2003) ......................................................................................6, 15

Smith v. State Farm Mut. Auto. Ins. Co.
    93 Cal. App. 4th 700 (2001) ........................................................................................6, 15

Sprewell v. Golden State Warriors,
    266 F.3d 979 (9th Cir. 2001) ........................................................................................4-5

Vess v. Ciba-Geigy Corp. USA,
    317 F.3d 1097 (9th Cir. 2003) .....................................................................................8, 9

Wilson v. Hewlett-Packard Co.,
    No. 09-2253, 2009 WL 3021240 (N.D. Cal. Sept. 17, 2009)...............................................19

Page(s)

*Wood ex rel. U.S. v. Applied Research Assocs.,*
 328 F. App'x 744 (2d Cir. 2009) ........................................................... 5

**STATUTES**

ARIZ. REV. STAT. §§ 44-1521 *et seq.* ........................................................... 2

CAL. BUS. & PROF. CODE § 17200 ........................................................... 2, 5

CAL. BUS. & PROF. CODE § 17203 ........................................................... 5

CAL. BUS. & PROF. CODE § 17204 ........................................................... 5

CAL. CIV. CODE § 1750(a) ........................................................... 6

CAL. CIV. CODE § 1750 *et seq.* ........................................................... 2, 5

CAL. CIV. CODE §§ 1761(d) & 1780 ........................................................... 7

CAL. CIV. CODE § 1770 ........................................................... 7

CAL. CIV. CODE §§ 1770(a)(5) and (a)(7) ........................................................... 7

CAL. CIV. CODE § 1780(a) ........................................................... 7

CAL. VEH. CODE § 24400(a)(2) ........................................................... 20

MASS. GEN. LAWS CH. 93A *et seq.* ........................................................... 2

N.Y. GEN. BUS. LAW §§ 349 *et seq.* ........................................................... 2

N.Y. VEH. & TRAF. LAW §§ 375(2) & 376-a(2) ........................................................... 20

OHIO REV. CODE §§ 1345.01 *et seq.* ........................................................... 2

OR. REV. STAT. §§ 646.605 *et seq.* ........................................................... 2

TEX. BUS. & COM. CODE §§ 17.41 *et seq.* ........................................................... 2

**RULES**

FED. R. CIV. P. 8(a)(2) ........................................................... 4

FED. R. CIV. P. 9(b) ........................................................... 8-9, 11

FED. R. CIV. P. 12(b)(6) ........................................................... 4-5, 16

## OTHER AUTHORITIES

WILLIAM L. STERN, BUS. & PROF. CODE § 17200 PRACTICE, § 10:9 (The Rutter Group
    2009) ...................................................................................................................................7

BAJI No. 12.36 ...........................................................................................................................21

Defendant Toyota Motor Sales, U.S.A., Inc. ("Toyota" or "Defendant") respectfully submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiffs Carlos Collado, Richard Hock, Bill Urban, Enrique Cantu, Paul Bigbie, William Askew, Jacek Pawlowicz, and James Freeman's (collectively, "Plaintiffs") First Amended Complaint (the "FAC") pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.

## I.   **INTRODUCTION**

The first amended putative class action complaint concerns High Intensity Discharge ("HID") headlights that were factory-installed in *some* model year ("MY") 2006 to 2009 Toyota Prius motor vehicles as an option replacing traditional halogen headlights. Plaintiffs allege that HID headlights installed in some MY 2006–2009 Toyota Prius vehicles contain an "inherent defect" stemming from the "Electronic Control Unit (ECU) and related circuitry . . . ." FAC, ¶¶ 3 & 25. According to Plaintiffs, this alleged defect causes the HID headlights to "properly illuminate when they are first turned on, but sporadically shut off while the vehicle is in use . . . ." *Id.*, ¶ 21. Based on each of Plaintiffs' individual experiences, these alleged problems first manifested at least one year after they purchased their Prius. *See id.*, ¶¶ 42–87. Although not expressly alleged, Plaintiffs apparently believe that their HID headlights should operate for some undisclosed period of time beyond Toyota's express warranty covering Plaintiffs' Prius vehicles.

Plaintiffs do not allege that Toyota refused to repair or replace HID headlights that may have failed *during* an applicable warranty period; nor do Plaintiffs claim that Toyota's purported failure to repair or replace Plaintiffs' HID headlights breached the express warranty covering each of their vehicles. Instead, Plaintiffs allege that the HID headlight failure that they experienced after the expiration of the applicable express warranty period constitutes a product defect that Toyota had an obligation to disclose to every owner and lessee of a MY 2006–2009

1

Prius because the alleged HID headlight failure was exclusively within Toyota's knowledge and constitutes an unreasonably dangerous condition. Toyota's alleged failure to disclose the possibility of "intermittent failure" of HID headlights after the expiration of the express warranty period, according to Plaintiffs, thus constitutes violations of the consumer protection statutes of California (CAL. BUS. & PROF. CODE § 17200 *et seq.* and CAL. CIVIL CODE § 1750 *et seq.*).[1]

Toyota brings this Motion to Dismiss because headlights are clearly maintenance parts on a vehicle that have a finite life and will likely fail at some point during the useful life of the vehicle; and thus, Plaintiffs' claims are fatally flawed. The general law in California is that a manufacturer has no duty to disclose the fact that a component part of a vehicle might possibly fail after the applicable warranty period. To the extent there may be law creating a narrow exception to this general rule, even under the exception, a plaintiff is required to plead and prove that the alleged defect: (i) is exclusively within the manufacturer's knowledge; (ii) is material to a purchaser because the purchaser has a reasonable expectation that the defective part would last the useful life of the vehicle; *and* (iii) creates an unreasonably dangerous condition. Plaintiffs do not allege any particular representation by Toyota with respect to how long HID headlights are supposed to last. Similarly, Plaintiffs do not allege any reason as to how HID headlight failure is

---

[1]    Plaintiffs assert that California law may be applied uniformly to the claims of the proposed nationwide class. FAC, ¶¶ 88-95. As an alternative to the application of California law, Plaintiff also alleges violations under the consumer protection laws of New York (N.Y. GEN. BUS. LAW §§ 349 *et seq.*), Texas (TEX. BUS. & COM. CODE §§ 17.41 *et seq.*), Arizona (ARIZ. REV. STAT. §§ 44-1521 *et seq.*), Massachusetts (MASS. GEN. LAWS CH. 93A *et seq.*), Ohio (OHIO REV. CODE. ANN. §§ 1345.01 *et seq.*), and Oregon (OR. REV. STAT. §§ 646.605 *et seq.*). *See* FAC, ¶¶ 88-95, 108, 119-124. Solely for purposes of this Motion to Dismiss, Toyota will accept that California consumer protection statutes apply to Plaintiffs' claims, but respectfully reserves the right to brief the choice of law issue in the context of a Motion for Class Certification, if necessary. *Nat'l Util. Serv., Inc. v. Tiffany & Co.*, No. 07 Civ. 3345 (RJS), 2009 WL 755292 (S.D.N.Y. March 20, 2009).

different or more dangerous than any other headlight failure that motor vehicle operators can experience while driving any car with any type of headlight—so as to fall within any exception that California law may recognize.

The real issue in this case, which is patently clear from the allegations in Plaintiffs' FAC, is that Plaintiffs are unhappy that their HID headlights did not last longer than they did and that certain replacement parts for Plaintiffs' HID headlights were apparently costly. The alleged dissatisfaction noted in Plaintiffs' FAC—which, if true, is a very real *business* issue for Toyota because such alleged dissatisfaction challenges the company's reputation for selling the highest quality cars with the highest satisfactory ratings—does not constitute an actionable violation of California consumer protection laws.

In summary, Plaintiffs do not adequately identify any false or misleading representation by Toyota that HID headlights should or would last for any particular amount of time, much less that Plaintiffs reviewed and relied on such representations when purchasing their Prius vehicles. Absent some affirmative representation, Toyota has no obligation to disclose the potential for HID headlight failure because Plaintiffs have not, and cannot, allege that consumers reasonably expect headlights to last for the life of a vehicle or that consumers were unaware that headlights can and will fail at some time. Accordingly, any claim based on affirmative or partial representations must necessarily fail. Nor will Plaintiffs be able to demonstrate that Toyota had a legal obligation under California law to disclose to Plaintiffs, or any other Prius owner, that HID headlights could fail at some point beyond the specific warranty period covering MY 2006–2009 Prius vehicles on the ground that the alleged HID failures pose an unreasonably dangerous condition. Headlight failure, while posing a *potential* safety risk if such failure involves both headlights simultaneously at night, does not present an *unreasonably* dangerous condition

because headlight failure is a known and inevitable risk that every vehicle operator accepts when operating any vehicle with any type of headlight at night.

Given Plaintiffs' inability to adequately plead that Toyota made any false or misleading representation about HID headlights and the absence of any obligation of Toyota to disclose that HID headlights can burn out or otherwise fail, this Court should dismiss Plaintiffs' First Amended Complaint in its entirety, with prejudice.

## II.   ARGUMENT

### A.   The Applicable Standard on Motion to Dismiss

A complaint must be dismissed if it fails to state any claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). Further, a particular count within a complaint must be dismissed as a matter of law if it fails to plead a cognizable legal theory. *See Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984); *Holloway v. King*, 161 F. App'x 122, 124 (2d Cir. 2005). This is such a case.

The U.S. Supreme Court has clarified the requirement that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing FED. R. CIV. P. 8(a)(2)). The Court in *Twombly* held that a plaintiff may survive a motion to dismiss only if he has pleaded facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. Federal courts should not sustain a complaint which merely leaves "open the possibility that a plaintiff might later establish some 'set of undisclosed facts' to support recovery." *Id.* at 561 (citation omitted). Rather, the facts set forth in the complaint must be sufficient to "nudge[] [the] claims across the line from conceivable to plausible." *Id.* at 570. The court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001);

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007), *opinion amended*, 275 F.3d 1187 (9th Cir. 2001); *see also Ashcroft v. Iqbal*, __U.S.__, 129 S. Ct. 1937, 1950 (2009) ("Rule 8 ... does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").[2]

### B. California's Consumer Protection Statutes

Plaintiffs allege violations of California Business & Professions Code §§ 17200 *et seq.* (the "Unfair Competition Law" or the "UCL") and California's Consumers Legal Remedies Act, Civil Code §§ 1750 *et seq.* (the "CLRA").

The UCL prohibits "unfair competition," which is defined as, among other things, "any unlawful, unfair or fraudulent business act or practice." CAL. BUS. & PROF. CODE § 17200. The UCL confers standing on "a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." *Id.* § 17204 (as amended by Proposition 64, § 3); *see In re Tobacco II Cases*, 46 Cal. 4th 298, 325–26 (2009) (the "as a result of" language "imposes an actual reliance requirement on plaintiffs prosecuting a private enforcement action under the UCL's fraud prong"). Damages are not allowed under the UCL, but a person injured by unfair competition may seek restitution or injunctive relief. *Id.* §§ 17203 & 17204; *Bank of*

---

[2] *See also Hoey v. Sony Elecs. Inc.*, 515 F. Supp. 2d 1099, 1102 (N.D. Cal. 2007) ("[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do") (internal citations omitted); *Pickern v. Pier 1 Imports, Inc.*, 339 F. Supp. 2d 1081, 1088 (E.D. Cal. 2004), *aff'd*, 457 F.3d 963 (9th Cir. 2006) ("[c]onclusory allegations in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a fishing expedition.") (quoting *DM Research Inc. v. College of Am. Pathologists*, 170 F.3d 53, 55 (1st Cir. 1999)); *Wood ex rel. U.S. v. Applied Research Assocs.*, 328 F. App'x 744, 747 (2d Cir. 2009).

*the West v. Superior Court*, 2 Cal. 4th 1254, 1266 (1992) ("damages are not available under section 17203").

   The UCL is written in the disjunctive such that "a practice is prohibited as 'unfair' or 'deceptive' even if not 'unlawful' and vice versa." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). The first substantive prong of the UCL, the "unlawful" prong, "borrows" violations of other laws and treats them as unlawful practices actionable under the UCL. *See Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, 383 (1992). The second substantive prong of the UCL is the "unfair" prong. California appellate courts are currently split as to what constitutes an "unfair" business practice in the consumer context. *See Bardin v. DaimlerChrysler Corp.*, 136 Cal. App .4th 1255, 1267 (2006) ("appellate court opinions have been divided over whether the definition of 'unfair' under the UCL as stated in *Cel-Tech* should apply to UCL actions brought by consumers").[3] Finally, a business practice is "fraudulent" under the third substantive prong of the UCL if "members of the public are likely to be deceived." *Comm. on Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197, 211 (1983), superseded by statute on another point as stated in *Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal. 4th 223, 228 (2006).

   The CLRA, however, prohibits 24 specific activities defined to be "unlawful." *See* CAL. CIVIL CODE § 1750(a). "Unlike the UCL, whose definition of prohibited conduct is open-ended and leaves it to the courts to decide the scope of the prohibition, the CLRA takes

---

[3] Under the broader definition recognized in *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 718–19 (2001), an "unfair" business practice occurs when that practice "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." Under a narrower definition recognized in *Scripps Clinic v. Superior Court*, 108 Cal. App. 4th 917, 940–41 (2003), a business practice is not "unfair" unless the UCL claim is tethered to a constitutional, statutory or regulatory provision.

exactly the opposite approach." WILLIAM L. STERN, BUS. & PROF. CODE § 17200 PRACTICE, § 10:9 (The Rutter Group 2009). The CLRA confers standing on a "consumer," who is defined as "an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes," who "suffers any damage as a result of the use or employment" of one of the 24 enumerated unfair methods of competition and unfair or deceptive acts or practices. CAL. CIVIL CODE §§ 1761(d) & 1780. An aggrieved consumer is entitled to actual damages, injunction, restitution, punitive damages, and other relief the court deems proper. *Id.* § 1780(a).

### C. The FAC Fails to State a Cause of Action Under California's UCL and CLRA

#### 1. Plaintiffs Cannot Rely On Any Law, Other than the CLRA, As the Basis for Any "Unlawful" UCL Claim

To the extent Plaintiffs rely on the "unlawful" prong of the UCL, they failed to specify which predicate law or laws form the basis of their unlawful UCL claim other than possibly the CLRA.[4] Accordingly, any claim under the "unlawful" prong of the UCL, other than a claim based on a violation under the CLRA, must fail as a matter of law. *See Permpoon v. Wells Fargo Bank Nat'l Ass'n*, No. CV-09-01140, 2009 WL 3214321, at *12 (S.D. Cal. Sept. 29, 2009) (dismissing cause of action for violation of UCL where plaintiffs failed to allege any law that Wells Fargo or H&R Block violated and pointed to no 'borrowed

---

[4] With respect to claims under the CLRA, though Plaintiffs have failed to specify which prohibited conduct under Cal. Civil Code § 1770 that Toyota is alleged to have engaged in, it appears the CLRA claim is based on Civil Code §§ 1770(a)(5) and (a)(7). *See* FAC, ¶ 112. Civil Code § 1770(a)(5) deems unlawful the practice of "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have . . . ." Civil Code § 1770(a)(7) deems unlawful "[r]epresenting that goods or services are of a particular standard, qualify, or grade, or that goods are of a particular style or model, if they are of another." As discussed herein, Plaintiffs fail to adequately allege that Toyota made any false "representation" regarding the Prius vehicles, much less any representation concerning the longevity of HID headlights.

claim' upon which the plaintiffs could base liability for a UCL claim based on unlawful conduct) (*citing People v. McKale,* 25 Cal. 3d 626, 635 (1979)); *Fortaleza v. PNC Fin. Servs. Group, Inc.,* 642 F. Supp. 2d 1012, 1020 (N.D. Cal. 2009) (granting motion to dismiss UCL claim, where plaintiff failed to allege and identify any state, federal, or local law or policy that served as the predicate for recovery under § 17200); *Khoury v. Maly's of California, Inc.*, 14 Cal. App. 4th 612, 619 (1993) (where complaint failed to identify any particular section of CAL. BUS. & PROF. CODE §§ 17000 that was violated and failed to describe with any reasonable particularity the facts supporting violation, demurrer was properly sustained as to the cause of action).

> ### 2. The FAC Fails to Allege With Specificity the Representations Allegedly Made by Toyota, or That Plaintiffs Relied on Any Representations As Required By Rule 9(b)

Plaintiffs allege that Toyota has "actively concealed the HID Headlight System defect from its customers." FAC, ¶ 22; *see also id.*, ¶¶ 36–41, 112–116. Where, as here, a complaint is necessarily grounded in fraud, or contains allegations of fraud, it must satisfy the heightened pleading requirement of Rule 9(b) of the Federal Rules of Civil Procedure. *Hoey v. Sony Elecs., Inc.*, 515 F. Supp. 2d 1099, 1106 (N.D. Cal. 2007). Rule 9(b) applies to California's consumer protection statutes, such as the UCL and CLRA, when the claims alleged are grounded in fraud. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).

The allegations of fraud must be accompanied by the "who, what, when, where, and how" of the misconduct charged. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *Hovsepian v. Apple, Inc.*, No. 08-5788, 2009 WL 2591445, at *3 (N.D. Cal. Aug. 21, 2009) (allegation that "Apple has responded by uniformly denying, on its website and in its retail stores, customer complaints and has sought to 'run out the clock' on the warranties that accompanied the iMac" did not satisfy *Vess*); *Eternity Global Master Fund Ltd. v.*

*Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 186-87 (2d Cir. 2004). The heightened pleading requirement of Rule 9(b) cannot be evaded by simply avoiding the use of the word "fraud." *Vess*, 317 F.3d at 1108.

"In addition, plaintiffs seeking to satisfy Rule 9(b) must 'set forth an explanation as to why the statement or omission complained of was false and misleading.'" *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 968 (N.D. Cal. 2008) (citations omitted), *aff'd*, 322 F. App'x 489 (9th Cir. 2009); *see also Vess*, 317 F.3d at 1106. "The pleading must be 'specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge and not just deny that they have done anything wrong.'" *Oestreicher*, 544 F. Supp. 2d at 968 (quoting *Vess*, 317 F.3d at 1106); *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004).

In this case, Plaintiffs allege that "[a]ccording to Toyota, HID headlights are superior to halogen headlights ... because HID headlights ... last longer than halogen headlights." FAC, ¶ 20. Plaintiffs do not identify where, when or how the purported affirmative representation was made, nor do they disclose who made it. All that is known from the FAC is that the HID headlights in Plaintiffs' Prius vehicles did not last as long as they wanted them to last. These allegations are simply insufficient to satisfy Rule 9(b) and fail to provide Toyota any notice of where, when, or from whom the purported statements originated. Plaintiffs also fail to allege that the purported representation is false.

In addition to their failure to satisfy the pleading requirements of Rule 9(b), Plaintiffs fail to allege that they read, heard, saw, or relied on Toyota's purported HID headlight representations. To prevail under the "fraudulent" prong of the UCL, the complaint must contain factual allegations showing that the alleged fraudulent business practice was likely to deceive a reasonable consumer. *Bardin*, 136 Cal. App. 4th at 1274 (conclusory allegations that the public

would likely be deceived are insufficient without pleading any facts showing the basis for that conclusion); *see also Freeman v. Time, Inc.*, 68 F.3d 285, 289, 289-90 (9th Cir. 1995) ("'likely' means probable, not just possible"); *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1360 (2003). If the alleged misrepresentation does not meet this standard, the allegation may be disposed of on a motion to dismiss. *See Haskell v. Time, Inc.*, 857 F. Supp. 1392, 1399 (E.D. Cal. 1994).

Similarly, California Proposition 64 imposes a requirement that the named plaintiff pursuing a fraud claim under the UCL must be exposed to and reasonably rely on the misleading advertisements at issue and must suffer injury therefrom. *See In re Tobacco II Cases*, 46 Cal. 4th at 326; *see also Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1194 (S.D. Cal. 2005), *aff'd*, 252 F. App'x 777 (9th Cir. 2007), *cert. denied*, 128 S. Ct. 2500 (2008) (in action where none of the named plaintiffs alleged that they saw, read, or in any way relied on advertisements or that they entered into transactions as a result of those advertisements, Court properly granted 12(b)(6) dismissal on UCL and FAL claims on the ground that the plaintiffs failed to adequately allege causation as required by Proposition 64); *Buckland v. Threshold Enters., Ltd.*, 155 Cal. App. 4th 798, 810 (2007) ("[P]laintiffs asserting CLRA claims sounding in fraud must establish that they actually relied on the relevant representations or omissions.").

Plaintiffs do not allege that any of them saw, read, heard, or relied on the vague affirmative representations regarding HID headlights attributed to Toyota in paragraph 20 of the FAC. Consequently, Plaintiffs cannot use the purported affirmative representation contained in paragraph 20 of the FAC as a basis for their claims against Toyota.

**3.**     **Toyota Had No Duty to Disclose that HID Headlights Might Fail After the Expiration of the Warranty Period Because No Reasonable Consumer Could Have Any Expectation That HID Headlights Would Last Beyond the Warranty Period**

Plaintiffs allege that Toyota had a duty to disclose the alleged HID defect because the defect "poses an unreasonable safety hazard; because Toyota had and has exclusive knowledge of and access to material facts . . . ; and because Toyota has actively concealed the HID Headlight System defect from its customers." FAC, ¶¶ 22, 32–41.

Under California law, there are four circumstances in which a duty to disclose can arise:

> "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material fact."

*Falk v. General Motors Corp.*, 496 F. Supp. 2d 1088, 1095 (N.D. Cal. 2007) (class action by California residents concerning defective speedometers) (citing *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 337 (1997)). Plaintiffs apparently claim that Toyota had a duty to disclose the alleged HID headlight defect based on the second and third *Judkins* factors. *See* FAC, ¶¶ 22, 32–41.

In the context of post-warranty failures, a duty to disclose under California law, arises only upon a showing that the public had an expectation or an assumption about the matter in question. *See Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138, 1145 (N.D. Cal. 2005); *see also Hovsepian*, 2009 WL2591445, at *3 (generalized allegations with respect to consumer expectations are insufficient under Rule 9(b), "especially when the alleged defect manifested itself more than one year after the expiration of the express warranty"); *Morgan v. Harmonix Music Sys., Inc.*, No. 08-5211, 2009 WL 2031765, at *5 (N.D. Cal. July 7, 2009) (in the absence

of any representation regarding durability of drum pedals, "the only expectation buyers could have had about the drum pedals was that they would function properly for the length of the express warranty"); *Aberdeen v. Toyota Motor Sales, U.S.A., Inc.*, No. CV 08-1690, slip op. at 6–7 (C.D. Cal. June 23, 2009) ("a plaintiff must show that the public had an expectation or an assumption about the matter in question in order to establish a duty to disclose"); *Falk*, 496 F. Supp. 2d at 1096 ("Since the *Bardin* and *Daugherty* plaintiffs alleged no consumer expectations about the matter in question, it could not be material."); *Bardin*, 136 Cal. App. 4th at 1270 ("a consumer can be fairly charged with the risk that the product will not match his economic expectations unless the manufacturer agrees that it will").

Thus, the critical inquiry in this litigation is whether a reasonable consumer would expect headlights—HID or otherwise—to last the life of the vehicle or any other period subsequent to warranty expiration.[5]  Though entirely ignored in the FAC, the existence of an express warranty contract is critical to this question because it would be manifestly unreasonable for any consumer to believe headlights would last forever, or beyond any warranty period when the warranty contract provides otherwise.

Indeed, in cases where a warranty contract applied, California courts have consistently held that where an alleged defect covered under a warranty manifests outside the period of coverage, a consumer may not recover under California consumer protection laws.

---

[5]   Of course, if the warranty contract provides for a limitation of coverage based on the mileage driven, it is also critical to know for how many miles the HID Headlight System functioned without the need for repair or replacement. Here, Plaintiffs have all failed to allege the number of miles driven when they first encountered issues with their headlights, and Plaintiff Freeman, who is the only plaintiff who had a subsequent repair or replacement of the "same" parts, failed to allege the number of miles driven prior to that subsequent repair or replacement over two years later. *See* FAC, ¶¶ 42–87.

*See, e.g., Oestreicher*, 544 F. Supp. 2d at 970 ("since any defects in question manifested themselves after expiration of the warranty period, plaintiff's CLRA claim must be barred under *Daugherty, Bardin, Hoey,* and *Long.*"); *Long v. Hewlett-Packard Co.*, No. C 06-02816 JW, 2007 WL 2994812, at *8 (N.D. Cal. July 27, 2007), *aff'd*, 316 F. App'x 585 (9th Cir. 2009) (where the manufacturer had not made any representations as to the life of the inverter or even as to the useful life of the Pavilion laptops at issue, a consumer's only reasonable expectation was that the Pavilion laptops would function properly for the duration of the manufacturer's limited one-year warranty); *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1026 (9th Cir. 2008) ("Aside from his bare allegations," there was no evidence to suggest that a reasonable consumer would have expected or assumed any particular head gasket lifespan in excess of the warranty period."); *Daugherty v. American Honda Motor Co.*, 144 Cal. App. 4th 824, 835, 838 (2006) (no CLRA claim was stated because no representation was made relating to the F22 engine, which functioned as warranted; likewise, any claim under the "fraudulent" or "unfair" prongs of the UCL failed because the "only expectation buyers could have had about the F22 engine was that it would function properly for the length of Honda's express warranty . . . .").

Any contrary rule "would eliminate term limits on warranties, effectively making them perpetual or at least for the 'useful life' of the product." *Oestreicher*, 544 F. Supp. 2d at 972; *Daugherty*, 144 Cal. App. 4th at 829 (trial court observed that the "[f]ailure of a product to last forever would become a 'defect,' a manufacturer would no longer be able to issue limited warranties, and product defect litigation would become as widespread as manufacturing itself."); *see also Clemens*, 534 F.3d at 1026 (granting motion for summary judgment; "In the context of post-warranty failure of engine components, California courts have viewed fraudulent concealment actions under [the UCL] with some skepticism .... "); *Bardin*, 136 Cal. App. 4th at

1263 (the trial court sustained demurrer without leave to amend noting that "[t]he burden on automobile manufacturers to disclose alternative mediums used in component parts or other cost savings measures used in the manufacture of automobiles would be huge compared to the benefit received by the automobile purchasing public.").

The circumstances in this case are strikingly similar to the circumstances in *Daugherty*, *Bardin*, and *Clemens*, which stand for the proposition that where an alleged defect, covered by a warranty contract, manifests outside the warranty period, a consumer fails to state a claim under the UCL and CLRA on the ground that the defect should have been disclosed.

In *Daugherty*, the plaintiffs alleged that certain vehicles were equipped with defective F22 engines which resulted in the slippage or dislodgment of the front balancer shaft oil seal, which, in turn, caused oil to leak onto and damage the nearby timing and balancer belts. *Daugherty*, 144 Cal. App. 4th at 827-28. In severe cases, repair or replacement of the engine was required. *Id.* at 827. One of the plaintiffs alleged total engine failure as a result of an oil leak. *Id.* at 828. It was undisputed that the defect in the F22 engines did not cause any malfunction in the automobiles of the named plaintiffs during the warranty period, which was the earlier of 3 years or 36,000 miles. *Id.* at 830. The plaintiff alleged a violation of the CLRA for failing to disclose that certain vehicles equipped with F22 engines contained this alleged defect. *Id.* at 833. Because no representation was made relating to the F22 engine, which functioned as warranted, the court held that no CLRA claim was stated. *Id.* at 835.

Similarly, the *Daugherty* court held that the plaintiff failed to allege a violation of the UCL under any of the three prongs of the statute. *Id.* at 837. Any claim under the "unlawful" prong failed because the claim was predicated on the Magnuson-Moss Warranty-Federal Trade Commission Improvement Act and the CLRA, and neither statute was violated.

14

*Id.* Any claim under the "fraudulent" or "unfair" prongs failed because the "only expectation buyers could have had about the F22 engine was that it would function properly for the length of Honda's express warranty . . . ." *Id.* at 838. Where an automobile part functioned precisely as warranted during the warranty period, a substantial injury to consumers could not be shown. *Id.* at 839.

In *Bardin*, the court held that the alleged failure of DaimlerChrysler to disclose that exhaust manifolds on certain vehicles were not made from cast iron, but from tubular steel, which had a higher than normal rate of premature failure, was not actionable under any of the prongs of the UCL (*i.e.*, was not unfair, fraudulent, or unlawful within the meaning of the UCL) or under the CLRA. The court held that the failure to allege any expectation or assumption about the material used for the manifolds, regarding the life span of exhaust manifolds, or facts showing DaimlerChrysler made any representation of any kind, much less regarding its vehicles, was fatal to the UCL claim based on the fraudulent prong.[6] *Bardin*, 136 Cal. App. 4th at 1275.

---

[6] The *Bardin* court held that the use of less expensive and less durable materials in the manufacture of vehicles did not violate public policy so as to constitute an unfair business practice under the UCL. *Bardin*, 136 Cal. App. 4th at 1270. In the absence of any representations regarding the performance of tubular steel exhaust manifolds, the violation of any warranty or other agreement, or any damages for physical injuries, the defendant did not engage in an unfair practice under *Smith v. State Farm Mut. Auto. Ins. Co*, 93 Cal. App. 4th 700 (2001). *Bardin*, 136 Cal. App. 4th at 1270–71. Nor was the "right" to have a vehicle contain an exhaust manifold that lasted as long as an "industry standard" cast iron manifold based on a legislatively-declared policy so as to constitute unfair conduct under *Scripps Clinic v. Superior Court*, 108 Cal. App. 4th 917 (2003). *Bardin*, 136 Cal. App. 4th at 1273.

Moreover, the plaintiffs failed to state a claim under the CLRA because the complaint neither alleged facts that DaimlerChrysler was bound to disclose or that it ever gave any information which could have the likely effect of misleading the public for want of communication of the fact that tubular steel, instead of cast iron, was used in manifolds. *Id.* at 1276.

A "vague reference" to the plaintiffs' assumption that the manifolds were "quality components" was insufficient. *Id.*

In *Clemens*, the Ninth Circuit affirmed a district court's dismissal under Rule 12(b)(6) of the express and implied warranty claims and the district court's grant of summary judgment on UCL claims under the "fraud" and "unfair" prongs. The plaintiff alleged that DaimlerChrysler's failure to disclose a defect in an engine component, the head gasket, which caused the engine to leak oil, was fraudulent and unfair under the UCL. But the component functioned throughout the warranty period. *Clemens*, 534 F.3d at 1022-24 (affirming dismissal of express and implied warranty claims). With respect to the UCL claim under the "fraud" prong, the Ninth Circuit held that the plaintiff failed to show that the concealed fact was material because "[a]side from his bare allegations," there was no evidence to suggest that a reasonable consumer would have expected or assumed any particular head gasket lifespan in excess of the warranty period. *Id.* at 1026. With respect to the unfair prong of the UCL, the Ninth Circuit held that the "failure to disclose a defect that might, or might not, shorten the effective life span of an automobile part that functions precisely as warranted throughout the term of its express warranty cannot be characterized as causing a substantial injury to consumers, and accordingly does not constitute an unfair practice under the UCL." *Id.* at 1026-27 (quoting *Daugherty*, 144 Cal. App. 4th at 839).

Neither *Falk* nor *Chamberlan*, upon which the *Falk* court relied, compel a contrary result. *See Oestreicher*, 544 F. Supp. 2d at 969-72 (noting that "although there is a split among courts, the cases weigh heavily toward *Daugherty* [rather than toward] *Falk*"); *Hovsepian*, 2009 WL 2591445, at *3 (noting that "the weight of applicable case law casts doubt on the basic viability of Hovsepian's CLRA claim") (*citing Oestreicher*, 544 F. Supp. 2d at 972).

The defect at issue in *Falk* concerned faulty speedometers that, after the warranty period, became erratic and failed to identify vehicle speed. The plaintiff alleged that a reasonable consumer would expect a speedometer to last the life of a vehicle, that the defendant had exclusive knowledge that speedometers would fail *and* that the erratic behavior of defective speedometers constituted an unreasonably dangerous condition because a driver did not know how fast his or her vehicle was traveling. The court held that based on these allegations, the defendant *may* have an affirmative obligation to disclose to purchasers that the speedometers were defective. *See Falk*, 496 F. Supp. 2d at 1095.

In *Chamberlan*, one of the plaintiffs' experts testified that "'all versions' of the plastic manifolds were defective in *that* they would not last the life of the vehicle." *Chamberlan*, 369 F. Supp. 2d at 1143. The court also found that "most manifolds do last the life of the engine . . . ." *Id.* at 1145.

Thus, even under *Falk* and *Chamberlan*, a component part will not be deemed to be defective <u>unless</u> it is reasonably expected to last the life of the vehicle (*i.e.*, beyond any applicable warranty period). Moreover, if the part fails to last the life of the vehicle, thus rendering the product "defective," the manufacturer would only have to disclose this defect if the defect is <u>also</u> in the exclusive knowledge of the defendant <u>and</u> poses an unreasonable safety risk.

In the instant case, however, Plaintiffs have not alleged, nor could they, that a reasonable consumer expects HID headlight systems to last for the life of the vehicle. Plaintiffs simply cannot contend that absent disclosure by a manufacturer, a reasonable consumer would not know that a headlight will eventually need replacement. *See Long*, 2007 WL 2994812, at *8 (A "manufacturer had no duty to disclose that, 'in the fullness of time,' a given part might eventually fail, necessitating repairs.") (quoting *Daugherty*, 144 Cal. App. 4th at 838).

Because "a failure to disclose a fact one has no affirmative duty to disclose is [not] 'likely to deceive' anyone within the meaning of the UCL," *Daugherty*, 144 Cal. App. 4th at 838, any claims under the UCL must necessarily fail as well. *See also Buller v. Sutter Health*, 160 Cal. App. 4th 981, 987 (2008) ("a consumer is not 'likely to be deceived' by the omission of a fact that was not required to be disclosed in the first place").

### 4. The Alleged HID Defect Does Not Pose An Unreasonable Safety Hazard Because It is No More Dangerous Than the Failure of Regular Headlights

In *Falk*, the U.S. District Court, for the Northern District of California, denied the defendant's motion to dismiss the plaintiff's CLRA and UCL claims that were based on an alleged defect that manifested outside the applicable warranty period. As discussed above, the defect at issue in *Falk* concerned faulty speedometers that, after the warranty period, became erratic and failed to identify vehicle speed. In addition to alleging that a reasonable consumer would expect a speedometer to last the life of a vehicle, the plaintiff alleged that the erratic behavior of defective speedometers constituted an unreasonably dangerous condition because a driver did not know how fast his or her vehicle was traveling. The court held that based on these allegations, the defendant may have an affirmative obligation to disclose to purchasers that the speedometers were defective. *See Falk*, 496 F. Supp. 2d at 1095.

To the extent *Falk* holds that post-warranty product failure may be actionable under the CLRA and UCL regardless of any applicable warranty period, Toyota notes that the Northern District's holdings in *Falk* have not gained wide acceptance. *See Oestreicher*, 544 F. Supp. 2d at 969-72 (noting that "although there is a split among courts, the cases weigh heavily toward *Daugherty* [rather than toward] *Falk*"); *Hovsepian*, 2009 WL 2591445, at *3 (noting that "the weight of applicable case law casts doubt on the basic viability of Hovsepian's CLRA claim") (*citing Oestreicher*, 544 F. Supp. 2d at 972). At this time, *Falk* has not been adopted by

the Ninth Circuit or any California state appellate court. To the contrary, courts that have reviewed whether a manufacturer must disclose an alleged defect that arises after an express warranty period have distinguished *Falk* on the ground that in *Falk* the allegedly defective speedometers posed an ***unreasonable*** safety risk ***and*** were contrary to alleged consumer expectation that speedometers last the functional life of a vehicle. *See Oestreicher*, 544 F. Supp. 2d at 971 ("[T]he safety consideration was integral to the court's finding [in *Falk*] that the non-disclosed information was material.").

The alleged HID headlight defect described in Plaintiffs' FAC does not pose an unreasonable safety risk, which *Falk* suggested (and subsequent cases make clear) is a necessary predicate for a claim based on failure to disclose. *Falk*, 496 F. Supp. 2d at 1094 (distinguishing *Daugherty* on the ground that there, the plaintiffs alleged no safety concerns); *see also Wilson v. Hewlett-Packard Co.*, No. 09-2253, 2009 WL 3021240, at *1 (N.D. Cal. Sept. 17, 2009) (dismissing CLRA claim, and noting that in *Oestreicher*, "Judge Patel cogently analyzed *Falk* both in light of the safety concerns which were integral to that decision as well as in light of the general policy implications that would result from recognizing a broad duty to disclose, effectively eliminating warranties short of the full useful life of the product."); *Hovsepian*, 2009 WL 2591445, at *3 n.4 ("*Falk* involved the failure of vehicle speedometers, an essential safety feature that a manufacturer may have a duty to disclose."); *Morgan*, 2009 WL 2031765, at *4 ("According to all relevant case law, defendants are only under a duty to disclose a known defect in a consumer product when there are safety concerns associated with the product's use.") (*citing*

*Daugherty*, *Bardin*, and *Long*).[7]  Plaintiffs have not and cannot allege that headlight failure is beyond the common and expected experience of drivers.  While the sudden failure of both headlights at night is a safety risk, it is a risk that requires no disclosure by a manufacturer because such risk is present in any car with any headlight.[8]

It is beyond challenge that headlights, whether halogen or HID, are regular maintenance items that require replacement or repair.  Even the California and New York motor vehicle codes contemplate the regular need to replace car headlights and hold vehicle operators responsible for driving without operating headlights.  These motor vehicle provisions impliedly create an obligation on vehicle operators to check their vehicles to ensure lights are operating properly.  *See, e.g.*, CAL. VEH. CODE § 24400(a)(2); N.Y. VEH. & TRAF. LAW §§ 375(2) & 376-

---

[7]    Plaintiffs' FAC is devoid of any factual allegations that the alleged HID headlight defect caused any physical injuries or property damage.  Instead, Plaintiff's FAC is peppered with adjectives such as "safe," "safety," "dangerous," etc. and speculates that the alleged HID defect "unreasonably increases the risk of automobile accidents and moving-violation penalties." FAC, ¶ 23.  Generalized and conclusory allegations are insufficient to establish a duty to disclose under the CLRA.  *See Daugherty*, 144 Cal. App. 4th at 839 n.8 & 836 (distinguishing *Outboard Marine Corp. v. Superior Court*, 52 Cal. App. 3d 30 (1975), a case in which a manufacturer of off-road vehicles represented that the vehicle would operate within certain parameters, even though it was actually unstable, on the ground that in *Outboard*, an actual representation was made to which the alleged concealment of the defect was contrary).

In this case, though Plaintiff Bigbie apparently received a citation to appear in court for driving without an operating passenger-side headlight, *see* FAC, ¶ 68, this was due to his obstinate refusal to have his headlight replaced based on his independent research, and not due to his lack of knowledge that his headlight needed replacement.  *Id.*, ¶¶ 66–70.

[8]    Of course, here, the Plaintiffs do not allege the sudden and complete failure of both HID headlights, but rather that "Prius drivers … temporarily lose illumination from one or both headlights," FAC, ¶ 1, requiring a driver to "toggle[] the lights off and back on again" to restore the intermittent headlight failure, *id.*, ¶ 21.  It would strain credulity to suggest that it is safer for headlights to completely fail without warning, like traditional headlights, than for headlights to intermittently turn on and off signaling the need for repair or replacement.  But this is exactly what Plaintiffs claim they would prefer—a "burned-out bulb" as opposed to headlights that shut off, then appear to be working fine for a while, signaling a need for replacement or repair.  *Id.*, ¶¶ 25–27.

a(2). If headlight failure was not a foreseeable and expected event, the vehicle codes would not expressly address this circumstance. In short, Plaintiffs cannot argue that headlight failure is not a foreseeable and expected occurrence that is within consumer knowledge absent disclosure. Plaintiffs cannot legitimately argue that Toyota's failure to disclose that HID headlights will burn out or otherwise fail is material, or that Toyota's alleged attempt to conceal such failure is even possible. *See, e.g., Johnson v. Mitsubishi Digital Elecs. Am., Inc.*, 578 F. Supp. 2d 1229, 1240–41 (C.D. Cal. 2008) (where information regarding television's input capabilities was made available in owner's manual and internet, there was no genuine issue of material fact with respect to fraudulent concealment claim nor with respect to UCL claim); *Clayton v. Landsing Pac. Fund, Inc.*, No. C 01-03110 WHA, 2002 WL 1058247, at *6 (N.D. Cal. May 9, 2002), *aff'd*, 56 F. App'x 379 (9th Cir. 2003) ("Much of plaintiff's claim thus rests on the dubious proposition that the Landsing Defendants engaged in fraud for failing to remind her of information (the value of her shares) that was already publicly available and of which a prudent investor would clearly have taken notice."); BAJI No. 12.36 ("A duty to disclose known facts arises in the absence of a fiduciary or a confidential relationship where one party knows of material facts and also knows that these facts are neither known nor readily accessible to the other party.").

Because "a failure to disclose a fact one has no affirmative duty to disclose is [not] 'likely to deceive' anyone within the meaning of the UCL," *Daugherty*, 144 Cal. App. 4th at 838, any claims under the UCL must necessarily fail as well. *See also Buller v. Sutter Health*, 160 Cal. App. 4th 981, 987 (2008) ("a consumer is not 'likely to be deceived' by the omission of a fact that was not required to be disclosed in the first place").

### 5. Plaintiffs' Own Allegations Belie the Contention that Toyota Intentionally or Fraudulently Concealed the Alleged HID Defect By Supplying Equally Defective Replacement Parts

Plaintiffs allege that Toyota fraudulently concealed the alleged HID Headlight defect by "replacing the HID Headlight System with equally defective parts." FAC, ¶¶ 4, 38; *see also id.*, ¶ 26 ("they persist even after a new bulb is installed"), ¶ 28 ("Replacing the HID Headlight System is expensive … and ultimately ineffective."). However, none of the Plaintiffs' experiences support such a contention, as summarized below:

- Plaintiff Richard Hock ("Hock") purchased a 2007 Prius in December, 2006. *Id.*, ¶ 42. Hock had the HID bulb replaced on the driver side of his vehicle in 2008; sometime after May, 2009, he had the HID bulb replaced on the passenger side. *Id.*, ¶¶ 42–48. No subsequent problems are alleged.

- Plaintiff Carlos Collado ("Collado") purchased a 2007 Prius in March, 2007. *Id.*, ¶ 49. Collado had his ballast replaced on the passenger side of his vehicle in April, 2008; one year later, in April, 2009, Collado had "one of his" HID bulbs replaced (though it is unclear which side) by a third-party mechanic. *Id.*, ¶¶ 49–56. No subsequent problems are alleged.

- Plaintiff Bill Urban ("Urban") purchased a 2007 Prius in April, 2007. *Id.*, ¶ 57. Urban had the HID bulb replaced on the passenger side of his vehicle in mid-2008; approximately one year later, in May, 2009, Urban had the HID bulb replaced on the driver side. *Id.*, ¶¶ 57–61. No subsequent problems are alleged.

- Plaintiff Enrique Cantu ("Cantu") purchased a 2007 Prius in March, 2007. *Id.*, ¶ 62. Cantu had the HID bulb replaced, presumably on the passenger side, in April, 2009; Cantu apparently experienced no further headlight problems thereafter. *Id.*, ¶¶ 62–65.

- Plaintiff Paul Bigbie ("Bigbie") purchased a 2006 Prius; however, the date of purchase is not alleged. *Id.*, ¶ 66. Bigbie noticed a problem with his passenger-side HID headlight in July, 2009, but "[b]ased on [his independent internet] research, Mr. Bigbie concluded that … there would be no guarantee that the HID headlight problems would not return and, to date, has not paid to repair his vehicle's HID headlight." *Id.*, ¶¶ 66–70. As a result, he received a citation to appear in court in November, 2009. *Id.*, ¶ 68.

- Plaintiff William Askew ("Askew") purchased a 2006 Prius in April, 2006. *Id.*, ¶ 71. Askew had the HID bulb replaced on the driver side of his vehicle in January, 2009; he then experienced a problem with his passenger side headlight "less than six months later." Toyota "agreed to fully reimburse Mr.

Askew for repairing the cost of replacing the passenger-side headlight only." *Id.*, ¶¶ 71–75. No subsequent problems are alleged.

- Plaintiff Jacek Pawlowicz ("Pawlowicz") purchased a 2008 Prius in December, 2007. *Id.*, ¶ 76. Pawlowicz had the HID bulb replaced on the passenger side in March, 2009; "[a] few months later," he had his driver side bulb replaced. *Id.*, ¶¶ 76–80. No subsequent problems are alleged.

- Plaintiff James Freeman ("Freeman") purchased a 2006 Prius; however, the date of purchase is not alleged. *Id.*, ¶ 81. Freeman had both the driver and passenger side HID bulbs replaced in June, 2007. Over two years later, after having had the benefit of fully-functional headlights for an undisclosed number of miles, in September, 2009, Mr. Freeman noticed that his headlights were not functioning properly. In November, 2009, he had both HID bulbs replaced and paid $175.50 after Toyota agreed to pay for half of the costs. *Id.*, ¶¶ 81–87.

Accordingly, none of the Plaintiffs, with the exception of Freeman, have ever experienced the "same" problem after having some component part of an HID Headlight System repaired or replaced. Though Plaintiff Freeman literally experienced problems with the "same parts," (*i.e.*, HID headlight bulbs for both the driver-side and passenger-side), given the intervening time during which he had to replace both bulbs, one simply could not attribute any fraud on the part of Toyota where the new bulbs worked without fail for over two years and over an undisclosed number of miles.

As another example that Plaintiffs' experiences do not support their allegations, though Plaintiffs are emphatic that the problem is not simply a matter of "burned-out bulbs," *id.*, ¶ 25 ("[t]he root cause…is not in the bulbs at all") every Plaintiff, except for Collado,[9] has, in fact, experienced problems *only* with their HID bulbs. *Id.*, ¶¶ 42–87.

Finally, with the possible exception of Freeman, all other Plaintiffs experienced intermittent failure with only one headlight at a time. *Id.*, ¶¶ 42–87. This also tends to

---

[9] Collado replaced the HID ballast. FAC, ¶¶ 52–53.

controvert the allegation that "the HID Headlight System defect are also much more likely to affect both headlights, resulting in a total loss of headlight illumination." *Id.*, ¶ 26.

## III.   CONCLUSION

For the foregoing reasons, Toyota respectfully requests that the Court dismiss Plaintiffs' First Amended Complaint in its entirety, with prejudice, on the grounds that the FAC fails to satisfy Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.


Dated: New York, New York
January 15, 2010

LOEB & LOEB LLP


By:____ /s/  Mark D. Campbell_____
       Michael L. Mallow (*admitted pro hac vice*)
       Mark D. Campbell (*admitted pro hac vice*)
       Darlene M. Cho (*admitted pro hac vice*)
       LOEB & LOEB LLP
       10100 Santa Monica Blvd., Suite 2200
       Los Angeles, California 90067
       310-282-2000

       Michael B. Shortnacy (MS-4445)
       LOEB & LOEB LLP
       345 Park Avenue
       New York, New York 10154-1895
       212-407-4000

       *Attorneys for Defendant*
       *Toyota Motor Sales, U.S.A., Inc.*


NY821193.1

**O**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

## CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 08-1690 PSG (VBKx) | Date | June 23, 2009 |
| Title | Anthony Z. Aberdeen v. Toyota Motor Sales, U.S.A., et al. | | |

Present: The Honorable Philip S. Gutierrez, United States District Judge

| Wendy K. Hernandez | Not Present | n/a |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings:** **(In Chambers) Order Denying Motion for Class Certification and Dismissing Case (filed 03/20/09)**

Before the Court is Plaintiff's motion for class certification. After considering the moving and opposing papers, as well as argument at the June 22, 2009 hearing, the Court hereby DENIES the motion.

I.    Background

On March 13, 2005, Anthony Aberdeen ("Plaintiff") purchased a new 2005 Toyota Prius hybrid automobile. On March 12, 2008, Plaintiff initiated this class action suit against Toyota Motor Sales, U.S.A., Inc. and Toyota Motor North America, Inc. (collectively, "Toyota"), alleging that Toyota engaged in false and deceptive advertising in connection with the sale and lease of Prius automobiles. Plaintiff claims that Toyota touted the Prius's Environmental Protection Agency ("EPA")-estimated fuel economy of a combined 55 miles per gallon ("mpg") in print and television ads, brochures, and other forms of advertising in spite of its awareness that these estimates were grossly inflated. According to Plaintiff, Toyota knew from its internal testing that the Prius did not achieve the EPA-estimated fuel economy under real-world driving conditions, but failed to disclose this information to consumers. Plaintiff has driven his Prius approximately 60,000 miles and has allegedly experienced an average fuel economy of just 35 mpg.

Plaintiff's First Amended Complaint ("FAC") asserts four causes of action: (1) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. &. Prof. Code §§ 17200, et seq.; (2) violation of California's False Advertising Law ("FAL"), Cal. Bus. &. Prof. Code §§ 17500, et

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

JS-6

### CIVIL MINUTES - GENERAL

|  Case No. | CV 08-1690 PSG (VBKx) |  Date | June 23, 2009 |
|---|---|---|---|
| Title | Anthony Z. Aberdeen v. Toyota Motor Sales, U.S.A., et al. | | |

*seq.*; (3) unjust enrichment; and (4) violation of the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.* He seeks to represent a class of all persons residing in the United States who, between January 1, 2000 and December 31, 2007 (the "Class Period"), purchased or leased, not for resale, a new 2001, 2002, 2003, 2004, 2005, 2006 or 2007 Toyota Prius Hybrid (hereinafter referred to as the "Class"). The Class contains a Subclass of all Class members who are "consumers" within the meaning of the CLRA and purchased or leased, not for resale, a new 2001, 2002, 2003, 2004, 2005, 2006 or 2007 Prius. Plaintiff now moves for class certification.

II.     Legal Standard

    A court may certify a class if a plaintiff has met all the prerequisites of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b). *See* Fed. R. Civ. P. 23; *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). The burden lies with the plaintiff to establish that the Rule 23(a) and Rule 23(b) requirements have been met. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Under Rule 23(a), a plaintiff must demonstrate that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the class representatives are typical of the claims or defenses of the class; and (4) the class representatives will fairly and adequately protect the interests of all members of the class. Fed. R. Civ. P. 23(a).

    If all four prerequisites of Rule 23(a) are satisfied, a plaintiff must also establish that one or more of the grounds for maintaining the suit under Rule 23(b) are met, including: (1) that there is a risk of substantial prejudice from separate actions; (2) declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) common questions of law or fact predominate and the class action is superior to other available methods of adjudication. Fed. R. Civ. P. 23(b).

III.    Discussion

    A.      Standing

    As an initial matter, Toyota contends that Plaintiff lacks standing to bring his UCL, FAL, and CLRA claims on his own or the putative class's behalf. A class may not be certified if the representative plaintiff lacks standing to sue in his or her own name. *See Lee v. Oregon*, 107 F.3d 1382, 1390 (9th Cir. 1997) ("If the litigant fails to establish standing, he may not seek relief on behalf of himself or any other member of the class.") (citation omitted).

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

### CIVIL MINUTES - GENERAL

|  Case No. | CV 08-1690 PSG (VBKx) |  Date | June 23, 2009 |
|---|---|---|---|
| Title | Anthony Z. Aberdeen v. Toyota Motor Sales, U.S.A., et al. | | |

  (i)  <u>Causation/Reliance</u>

  First, Toyota argues that Plaintiff lacks standing under the UCL, CLRA, and FAL because he was not exposed to Toyota's allegedly misleading advertisements before buying his Prius. Therefore, Toyota maintains, Plaintiff cannot show that he relied on those ads in making his purchase decision.

  Prior to the passage of Proposition 64, the UCL "authorized any person acting for the general public to sue for relief from unfair competition." *Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal. 4th 223, 227, 46 Cal. Rptr. 3d 57 (2006). In 2004, California voters amended the UCL and FAL to limit standing to sue to "any person who has suffered injury in fact and has lost money or property as a result of such unfair competition." Cal. Bus. & Prof. Code §§ 17204 & 17535; *Mervyn's*, 39 Cal. 4th at 227. Thus, Proposition 64 "eliminated so-called 'unaffected plaintiff' standing." *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1136 (C.D. Cal. 2005). The California Supreme Court recently held that "a plaintiff must plead and prove actual reliance" to establish standing under the UCL. *In re Tobacco II Cases*, 46 Cal. 4th 298, 328, 93 Cal. Rptr. 3d 559 (2009).[1] Similarly, the CLRA limits standing to "[a]ny consumer who suffers damages *as a result of*" the defendant's unlawful conduct. Cal. Civ. Code § 1780(a) (emphasis added).

  Of course, a plaintiff cannot show that he relied on a defendant's misrepresentation if he never saw or heard the actionable statement. In the instant case, Plaintiff admitted at his deposition that he never did any online research about the Prius and never visited Toyota's website, where the "Prius Fuel Savings Calculator," which was previously identified by the Court as a potentially actionable misrepresentation, was located. *Dfts' Ex. A* 48:9-11, 173:15-22. Plaintiff further testified that the only Prius advertising materials he recalled seeing were a television advertisement called "Holes" and the 2005 Prius brochure. *Id.* at 138:18-139:4. The

---

  [1] *In re Tobacco II* further held that a plaintiff "is not required to necessarily plead and prove individualized reliance on specific misrepresentations or false statements where, as here, those misrepresentations and false statements were part of an extensive and long-term advertising campaign." *Id.* In contrast to the decades-long advertising tobacco campaign alleged in that case, here, the allegedly misleading advertising materials identified by Plaintiff were in limited circulation for approximately one year prior to Plaintiff's Prius purchase. Accordingly, under *In re Tobacco II*, more specific allegations of reliance appear to be required in this case.

**O**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

## CIVIL MINUTES - GENERAL

|  Case No. | CV 08-1690 PSG (VBKx) |  Date | June 23, 2009 |
| --- | --- | --- | --- |
| Title | Anthony Z. Aberdeen v. Toyota Motor Sales, U.S.A., et al. | | |

"Holes" ad contained the following fuel economy representation:

> 55 MPG City/Highway Combined
> 2004 EPA-estimated 60 city, 51 highway, 55 combined mpg. Actual mileage may vary.

Defendant correctly argues that the "Holes" ad is not actionable under *Paduano v. American Honda Motor Co., Inc.*, 169 Cal. App. 4th 1453, 88 Cal. Rptr. 3d 90 (2009) because it merely disclosed the Prius's EPA-estimated fuel economy without making any additional representations. Similarly, the 2005 brochure simply stated the EPA estimates; Plaintiff has failed to identify any actionable statements in the pamphlet.

On April 14, 2009—over a month after Plaintiff's deposition and weeks after he filed the instant motion and supporting papers—Plaintiff served Toyota with supplemental interrogatory responses in which he identified two print advertisements that he saw prior to purchasing his Prius. *See Dfts' Ex. C* at 5. The first ad stated: "Start thinking that 55 mpg* is normal." *Id.* The asterisk corresponded to the following text at the bottom of the ad: "*2004 EPA-estimated 60 city/51 highway/55 combined mpg. Actual mileage may vary." *Dfts' Ex. E.* The other print ad Plaintiff claims to have seen was called "Flames" and contained the following statement: "Prius achieves nearly 2.5 times the average fuel efficiency of conventional vehicles and close to 90% fewer smog-forming emissions . . . ." *Dfts' Ex. C* at 5.

Toyota argues that the Court should disregard Plaintiff's eleventh-hour claim that he saw these ads and relied on them in deciding whether to purchase a Prius. When a declaration is expressly contradicted by deposition testimony without explanation, the deposition testimony will control. *Evans v. IAC/Interactive Corp.*, 244 F.R.D. 568, 571 (C.D. Cal. 2007); *see also Kenney v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991) (a party cannot create a triable issue of fact by submitting an affidavit contradicting his prior deposition testimony). Here, Plaintiff stated at his deposition that he could not recall seeing any advertising materials besides the "Holes" ad and the 2005 sales brochure. He also testified that he did not read the magazines in which the "Start thinking" ad ran. *See Dfts' Ex. A* 117:4-119:17; *Ex. B* at 6-7. Further, Plaintiff failed to identify the "Flames" and "Start thinking" ads in his initial response to Toyota's interrogatories. Plaintiff has not attempted to explain this inconsistency. In light of the foregoing, as well as the suspect timing of Plaintiff's sudden "recollection"—which came nearly a month after Plaintiff filed the instant motion, and after the Court ruled on Toyota's motion for

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES - GENERAL**

|  Case No. | CV 08-1690 PSG (VBKx) | Date | June 23, 2009 |
|---|---|---|---|
| Title | Anthony Z. Aberdeen v. Toyota Motor Sales, U.S.A., et al. | | |

judgment on the pleadings—the Court finds that Plaintiff's supplemental response is sham.[2] *See Kennedy*, 952 F.2d at 266-67. Accordingly, the Court will disregard it for the purposes of this motion.

Plaintiff argues that he is not required to plead and establish reliance because his claims are based on a "pure omission" theory. According to Plaintiff, this class action is not premised on any affirmative misrepresentations, but rather Toyota's failure to disclose the Prius's real-world fuel efficiency as revealed by its internal testing. This theory fails for at least two reasons.

As an initial matter, the Court notes that Plaintiff's argument is premised on a last-minute attempt to reshape his theory of the case. The FAC painted an entirely different picture of this lawsuit:

> This case narrowly focuses on the use of *false and deceptive advertising* by Defendants to sell the [Prius] . . . . This case challenges the disingenuous way that Toyota *advertises and markets* the [Prius], with *inaccurate representations* of fuel economy that the car simply does not achieve under normal driving conditions . . . .

*FAC* ¶ 2 (emphasis added). Apparently realizing that *Paduano* and the Court's order on Toyota's motion for judgment on the pleadings presented serious obstacles to recovery, however, Plaintiff insists that his claims are *not* based on Toyota's affirmative misrepresentations in Prius ads. Instead, he now focuses on Toyota's alleged failure to disclose the results of internal studies which showed that the Prius did not achieve the EPA-estimated fuel economy under realistic driving conditions.

Under Plaintiff's interpretation of the law, Toyota can be liable for failing to disclose *any* information that might be of material interest to the customer. However, it is well-settled that "[a]bsent a duty to disclose, the failure to do so does not support a claim under the fraudulent prong of the UCL." *Buller v. Sutter Health*, 160 Cal. App. 4th 981, 987, 74 Cal. Rptr. 3d 47 (2008). Plaintiff contends that *Falk v. General Motors Corp.*, 496 F. Supp. 2d 1088 (N.D. Cal. 2007), stands for the proposition that a defendant has a broad duty to disclose any material facts

---

[2] Curiously, Plaintiff himself does not draw attention to his supplemental response in addressing Toyota's reliance argument. Instead, he argues that he need not allege or show that he saw any of the advertisements at issue.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

### CIVIL MINUTES - GENERAL

| Case No. | CV 08-1690 PSG (VBKx) | Date  | June 23, 2009 |
| --- | --- | --- | --- |
| Title | Anthony Z. Aberdeen v. Toyota Motor Sales, U.S.A., et al. | | |

within its exclusive knowledge, without regard to whether the defendant made any affirmative representations. However, California courts have not adopted as broad a reading of the consumer fraud statutes as Plaintiff would have it.

*Falk*, adopting the test for the tort of fraud by omission as set forth in *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336, 60 Cal. Rptr. 2d 539 (1997), held that a failure to disclose is actionable under the CLRA in four circumstances: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant has exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material fact. 496 F. Supp. 2d at 1094-95.

Toyota suggests that the duty to disclose articulated in *Falk* is limited to cases involving a safety-related product defect. This may be correct. *See Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 836, 51 Cal. Rptr. 3d 118 (2006) (finding no duty to disclose product defect in absence of safety concerns); *Oestricher v. Alienware Corp.*, 544 F. Supp. 2d 964, 969-73 (N.D. Cal. 2008) (discussing cases and rejecting *Falk*'s broad reading of CLRA duty to disclose non-safety related product defect). But another distinction appears in the cases: where there is no fiduciary relationship and the defendant made no affirmative or partial misrepresentations, a plaintiff must show that the public had an expectation or an assumption about the matter in question in order to establish a duty to disclose. *See Daugherty*, 114 Cal. App. 4th at 838 (failure to disclose an engine problem not actionable under the UCL because "[t]he only expectation buyers could have had about the F22 engine was that it would function properly for the length of Honda's express warranty, and it did"); *Bardin v. DaimerChrysler Corp.*, 136 Cal. App. 4th 1255, 1275, 39 Cal. Rptr. 3d 634 (2006) (no duty to disclose where plaintiff failed to allege that public had any expectation that car manufacturer's exhaust manifolds would be made from cast iron, as opposed to tubular steel); *Buller*, 160 Cal. App. 4th at 987-89 (plaintiff failed to state UCL and CLRA claims based on insurer's failure to disclose prompt-pay discount policy because patients in plaintiff's position were "not likely to be operating under the expectation that they are entitled to a discount"); *Falk*, 496 F. Supp. 2d at 1095-96 (duty to disclose existed where a reasonable consumer would expect a speedometer to last for the life of a vehicle).

Here, to the extent that Plaintiff's claims are based on pure omission theory, they must fail because Plaintiff has not identified a source (aside from Toyota's advertising) for the Prius

**O**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

### CIVIL MINUTES - GENERAL

|  CV 08-1690 PSG (VBKx) |  June 23, 2009 |
|---|---|
|  Anthony Z. Aberdeen v. Toyota Motor Sales, U.S.A., et al. | |

fuel economy expectations that he and members of the putative class allegedly had.[3] In the absence of knowledge of the EPA fuel economy estimates, a reasonable consumer would not assume that an automobile would achieve 55 mpg. Accordingly, Plaintiff cannot show that Toyota had a duty to disclose the results of its internal fuel economy testing.

Moreover, Plaintiff's theory that Toyota had a duty to disclose its alleged knowledge of the inaccuracy of EPA estimates for the Prius is untenable in light of *Paduano*. As this Court explained in its order on Toyota's motion for judgment on the pleadings:

> Plaintiff argues that under California law, when Toyota disclosed the EPA estimates in its advertising, it assumed a duty to disclose that the estimates were inaccurate or to otherwise provide information about "realistic" fuel efficiency. However, reading such a requirement into the UCL, CLRA, or FAL is foreclosed by *Paduano*'s holding that referring to EPA estimates in advertising is not actionable *unless* the car company makes other misleading representations about achieving those estimates.

*Order of April 3, 2009* at 9-10. Paduano held that "[a]s a matter of law, there is nothing false or misleading about Honda's advertising with regard to its statements that identify the EPA fuel economy estimates for the two Civic Hybrid models." 169 Cal. App. 4th at 1470. In other words, the California Court of Appeals determined that there is no duty to disclose additional facts regarding a car's fuel economy *even when a manufacturer choose to speak* (i.e., by disclosing EPA estimates). In light of this holding, a pure omission regarding fuel economy is not actionable.

In sum, the Court finds that because Plaintiff did not see any actionable advertisements prior to purchasing his Prius, he lacks standing to bring UCL, FAL, or CLRA claims on behalf of himself and the putative class.[4] Accordingly, the motion for class certification is DENIED.

---

[3] As Toyota points out, for this reason, it is clear that although Plaintiff now argues that this is not an advertising case, there can be no question that it is.

[4] *Massachusetts Mutual Life Insurance Co. v. Superior Court*, 97 Cal. App. 4th 1282, 119 Cal. Rptr. 2d 190 (2002), and other cases cited by Plaintiff do not compel a different result. Although *Massachusetts Mutual* held that common reliance by members of class may be inferred when the misrepresentations were material, it also explicitly stated that "such an inference will

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

### CIVIL MINUTES - GENERAL

|  Case No. | CV 08-1690 PSG (VBKx) |  Date | June 23, 2009 |
|---|---|---|---|
| Title | Anthony Z. Aberdeen v. Toyota Motor Sales, U.S.A., et al. | | |

(ii)     Whether Plaintiff is a "Consumer" under the CLRA

Toyota also maintains that Plaintiff lacks standing to maintain a CLRA claim because he purchased his Prius for business use. The CLRA prohibits the use of "unfair methods of competition and unfair or deceptive acts or practices" in sale or leases of goods to consumers. Cal. Civ. Code § 1770(a). The statute defines "consumer" as "an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes." Cal. Civ. Code § 1761(d).

Plaintiff testified in his deposition that the Prius was his "business car, so all mileage would be written off that way" and further admitted that he took a tax deduction for the cost of the Prius as a business car. *Dfts' Ex. A* 19:10-22. Thus, Toyota contends, Plaintiff did not purchase his Prius primarily for personal, family, or household purposes. Plaintiff disagrees, arguing that at the time of his purchase, he checked a box on a dealer form to indicate that he was buying his Prius primarily for "personal, family or household" use (as opposed to "business or commercial" use). *Shahian Decl.*, Ex. 39. And although Plaintiff stated at his deposition that the Prius was "officially" his business car, he also estimated that the split between his business and personal use of the car was "maybe 50/50." *Dfts' Ex. A* 266:14-267:3.

In support of its argument that Plaintiff is not a "consumer" under the CLRA, Toyota relies on *Lazar v. Hertz Corp.*, 143 Cal. App. 3d 128, 191 Cal. Rptr. 849 (1983). In *Lazar*, the plaintiff, a self-employed businessman, sued a car rental corporation for overcharging customers for gas used to fill up the tanks of returned rental automobiles. The court held that the plaintiff

_____

not arise where the record will not permit it." *Id.* at 1294. Here, evidence that Plaintiff did not see any actionable advertisements precludes an inference that he relied on Toyota's alleged misrepresentations. *See also Caro v. Proctor & Gamble Co.*, 18 Cal. App. 4th 644, 668-69, 22 Cal. Rptr. 2d 419 (1993) (alleged misrepresentation that defendant's reconstituted orange juice was "fresh" was not material as to plaintiff because he did not believe defendant's product to be "fresh"); *Buckland v. Threshold Enters., Ltd.*, 155 Cal. App. 4th 798, 809-11, 66 Cal. Rptr. 3d 543 (2007) (lack of actual reliance defeats fraud-based CLRA claim).

Thus, although Plaintiff makes much of the fact that the Court ruled in its order on Toyota's motion to dismiss that reliance could be presumed on a class-wide basis, that reasoning is no longer applicable because the Court now has a fully developed record before it which precludes such an inference.

O

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

JS-6

### CIVIL MINUTES - GENERAL

|  | CV 08-1690 PSG (VBKx) |  | June 23, 2009 |
|---|---|---|---|
| Title | Anthony Z. Aberdeen v. Toyota Motor Sales, U.S.A., et al. | | |

could not maintain a class action for violation of the CLRA because he admittedly did not rent his car as a "consumer." *Id.* at 142. Plaintiff, on the other hand, cites *Mazza v. American Honda Motor Co.*, 254 F.R.D. 610, 617 (C.D. Cal. 2008), in which the court concluded that the CLRA's definition of consumer "was intended solely to exclude dealer/wholesale purchasers." However, *Mazza* did not cite any authority for this proposition or include any analysis; therefore, the Court does not find *Mazza* to be persuasive.

The Court agrees with *Lazar*'s reasoning and finds that Plaintiff did not purchase his Prius as a "consumer" within the meaning of the CLRA. Plaintiff's sworn deposition testimony is that he has taken multiple tax breaks on his Prius as a "business" car. Thus, Plaintiff's supplemental declaration, in which he states that he has driven his Prius "primarily for personal and family use" since purchasing it, appears to be either a sham or an admission of tax fraud. *See Aberdeen Supp. Decl.* ¶¶ 5, 7. Accordingly, Plaintiff lacks standing as a "consumer" under the CLRA.

### B. Rule 23 Requirements

Although Plaintiff's lack of reliance on any actionable advertisements is sufficient reason to deny the instant motion, the Court will address two additional barriers to class certification.

#### (i) Typicality

Federal Rule of Civil Procedure 23(a)(3) requires a representative plaintiff to establish that his claims are typical of those of the class. The standard is permissive: "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Here, Plaintiff's lack of standing to pursue UCL, FAL, and CLRA claims precludes a finding of typicality. *See Prado-Steinman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11 Cir. 2000). Because Plaintiff did not view any of Toyota's allegedly deceptive advertisements prior to purchasing his Prius, his claims are clearly not typical of consumers who saw and relied on those ads. Additionally, Plaintiff's CLRA claim is subject to the defense that Plaintiff is not a "consumer" within the meaning of the statute. Class certification is inappropriate where, as here, the representative plaintiff is subject to unique defenses that threaten to preoccupy him. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992); *Gonzalez v. Proctor & Gamble Co.*, 247 F.R.D. 616, 622 (S.D. Cal. 2007). Rather than offering compelling

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

**CIVIL MINUTES - GENERAL**



| Case No. | CV 08-1690 PSG (VBKx) | Date | June 23, 2009 |
|----------|----------------------|------|---------------|
| Title | Anthony Z. Aberdeen v. Toyota Motor Sales, U.S.A., et al. | | |

counterarguments on these points, Plaintiff merely insists he is typical because he was subjected to the same omissions regarding real-world Prius fuel economy as the other members of the class. Because Plaintiff has not established that the typicality requirement is met, the motion is also properly DENIED on this basis.

      (ii)    Rule 23(b)(3)

     In addition to satisfying all four Rule 23(a) requirements, a plaintiff must also show that the putative class falls within one of the categories enumerated in Rule 23(b). *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 724 (9th Cir. 2007). In the instant case, Plaintiff seeks certification under Rule 23(b)(3), which provides that a class may be certified where common questions of law or fact predominate over individual questions and a class action is the superior method for adjudicating the controversy. To determine whether common issues predominate, the court must look to the substantive issues raised by the plaintiff and inquire into the relevant proof for each. *Jimenez v. Domino's Pizza, Inc.*, 238 F.R.D. 241, 251 (C.D. Cal. 2006).

     Here, Plaintiff has failed to satisfy his burden to show that common questions predominate over individual ones. Whether each class member saw any actionable advertisements and whether he or she relied on Toyota's alleged misrepresentations would require individualized proof. *See Caro*, 18 Cal. App. 4th at 668 (individual issues predominated on claim that defendant misrepresented that its orange juice was "fresh" because court would need to inquire as to whether each class member read the label and what he or she believed). *In re Tobacco II* and the Court's discussion of standing, *supra*, indicate that reliance may not be presumed on a class-wide basis in this case. Additionally, whether each class member purchased his or her Prius for personal, family, or household use would demand individual inquiries. Other individual questions of fact include (1) what fuel economy each class member achieved; (2) what factors contributed to the driver's fuel economy, such as driving habits, maintenance habits, and driving conditions[5]; and (3) whether the purchaser's fuel economy expectations were met. Therefore, class certification must also be DENIED because questions common to all class members do not predominate over questions affecting only individual members.

     C.    Federal Jurisdiction

---

     [5] For example, Plaintiff has admitted to getting a speeding ticket for driving his Prius in excess of 65 miles per hour. *Dfts' Ex. A* 240:7-241:14. Speed is one of many variables that can impact fuel economy. *See Dfts' Ex. Q.*

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES - GENERAL**

|  Case No. | CV 08-1690 PSG (VBKx) |  Date | June 23, 2009 |
|---|---|---|---|
| Title | Anthony Z. Aberdeen v. Toyota Motor Sales, U.S.A., et al. | | |

Although neither party has contested this Court's jurisdiction, the Court has a responsibility to raise the issue *sua sponte*. *See Morongo Band of Mission Indians v. California State Bd. of Educ.*, 858 F.2d 1376, 1380 (9th Cir. 1988). Plaintiff originally asserted that federal jurisdiction over this action existed pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2)(A). However, Plaintiff's suit is no longer a class action.

CAFA establishes federal jurisdiction over any class action if (1) the class has at least 100 members, (2) the aggregate amount in controversy is at least $5 million, and (3) any class member is a citizen of a state different from any defendant. 28 U.S.C. § 1332(d)(2)(A). The statute itself is silent as to whether dismissal or remand is required after denial of class certification, and district courts are split on the issue. *Compare, e.g., Genenbacher v. CenturyTel Fiber Co. II, LLC*, 500 F. Supp. 2d 1014, 1017 (C.D. Ill. 2007) (retaining jurisdiction following denial of class certification); *Cooper v. R.J. Reynolds Tobacco Co.*, 586 F. Supp. 2d 1312, 1319 (M.D. Fla. 2008) (citing general rule that post-removal events do not divest federal court of jurisdiction) *with Falcon v. Philips Elecs. N. Am. Corp.*, 489 F. Supp. 2d 367 (S.D.N.Y. 2007) (dismissing case for lack of jurisdiction after proposed class representative found inadequate); *Arabian v. Sony Elecs. Inc.*, No. 05-1741, 2007 WL 2701340, at *3 (S.D. Cal. Sept. 13, 2007) (finding no jurisdiction when there is no "reasonably foreseeable possibility" that class will be certified); *see also Good v. Ameriprise Fin., Inc.*, 248 F.R.D. 560, 574 (D. Minn. 2008) (reviewing split of authority). The Ninth Circuit has never addressed this question.

The Court is persuaded by the reasoning of *Arabian, Falcon*, and *McGaughey v. Treistman*, No. 05-7069, 2007 WL 24935, at *2-3 (S.D.N.Y. Jan. 4, 2007). A determination that class certification is not a "reasonably foreseeable possibility" is not a post-removal change in jurisdictional facts, but rather is equivalent to a finding that jurisdiction never existed under CAFA in the first place. *Arabian*, 2007 WL 2701340, at *5. In the instant case, there is no "reasonably foreseeable possibility" that a class will be certified. Although substitution of a new class representative might cure the problem of standing, the predominance of individual over common questions would continue to preclude class certification. Accordingly, CAFA does not provide a basis for jurisdiction over this action. As no other basis for federal jurisdiction has been alleged, the case must be dismissed.

IV.  Conclusion

For the foregoing reasons, the motion for class certification is DENIED. The action is DISMISSED for lack of subject matter jurisdiction.

**O**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

## CIVIL MINUTES - GENERAL

| Case No. | CV 08-1690 PSG (VBKx) | Date | June 23, 2009 |
|---|---|---|---|
| Title | Anthony Z. Aberdeen v. Toyota Motor Sales, U.S.A., et al. | | |

**IT IS SO ORDERED.**