# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Carlos Collado, Richard Hock, Bill Urban, Enrique Cantu, Paul Bigbie, William Askew, Jacek Pawlowicz, and James Freeman, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br> v. <br><br> Toyota Motor Sales, U.S.A., Inc., a California corporation, <br><br> Defendant. | Case No. 1:09-CV-07151-RJS <br><br> CLASS ACTION <br><br> **OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** |

## TABLE OF AUTHORITIES

**Page**

I.     INTRODUCTION ............................................................................... 1

II.    SUMMARY OF PLAINTIFFS' FACTUAL ALLEGATIONS ....................................... 4

III.   THE LEGAL STANDARD APPLIED TO PLAINTIFFS' COMPLAINT ..................... 8

IV.   PLAINTIFFS HAVE STATED A CLAIM AGAINST TOYOTA FOR VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT (CLRA) ......................................... 8

     A.    Plaintiffs' CLRA Claims Arise From Toyota's Failure To Disclose A Safety-Related Issue With The HID Headlight System—Not From Affirmative Misrepresentations. ................................................................. 9

     B.    Plaintiffs Have Pled Facts Giving Rise To A Duty To Disclose The HID Headlight System Defect. ......................................................... 10

     C.    The Fact That The Headlights In Class Vehicles Intermittently Stop Working While Being Driven Is A Material Fact. ............................. 12

          1.    A Fact Is Material If It Would Be Considered Important To A Reasonable Consumer ............................................... 12

          2.    Facts Related To Safety Are Deemed Material Under California Law ... 13

              (a)   *Falk v. General Motors* ................................. 14

              (b)   *Marsikian v. Mercedes Benz* ......................... 14

              (c)   *Cirulli v. Hyundai Motor Company* ............... 14

              (d)   *In re OnStar Contract Litigation* ................. 15

              (e)   The *Daugherty* Line of Cases ....................... 15

          3.    Plaintiffs Have Adequately Pled A Safety-Related Defect ..................... 16

V.    PLAINTIFFS HAVE STATED A CLAIM AGAINST TOYOTA FOR VIOLATION OF THE UNFAIR COMPETITION LAW (UCL) .............................................. 18

     A.    Plaintiffs State A Claim Under Each Prong of the UCL. .................... 18

    1.  Toyota's Conduct Violates The UCL's Unlawful Prong.........................18

    2.  Toyota's Conduct Violates The UCL's Fraudulent Prong. .....................18

    3.  Toyota's Conduct Violates The UCL's Unfair Prong. ............................20

VI.  CONCLUSION...............................................................................................................20

# TABLE OF AUTHORITIES

**Case**                                                                                         **Page**

*Arar v. Ashcroft*,
  585 F.3d 559 (2d. Cir. 2009) ............................................................................. 8

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009) ...................................................................................... 8

*Baggett v. Hewlett-Packard Co.*,
  582 F. Supp. 2d 1261 (C.D. Cal. 2007) ......................................................... 12

*Bardin v. DaimlerChrysler Corp.*,
  136 Cal. App. 4th 1255 (2006) ............................................................ 2, 3, 15

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................... 8

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*,
  20 Cal. 4th 163 (1999) ................................................................................... 18

*Cirulli v. Hyundai Motor Company*,
  2009 WL 5788762 (C.D. Cal. 2009) ....................................................... 14, 16

*Clemens v. DaimlerChrysler Corp.*,
  534 F.3d 1017 (9th Cir. 2008) ...................................................................... 19

*Daugherty v. American Honda Motor Co., Inc.*,
  144 Cal. App. 4th 824 (2006) ............................................................... passim

*Engalla v. Permanente Medical Group, Inc.*,
  15 Cal. 4th 951 (1997) ............................................................................ 12, 13

*Falk v. General Motors, Corp.*,
  496 F. Supp. 2d 1088 (N.D. Cal. 2007) .............................................. passim

*Goodman v. Kennedy*,
  18 Cal. 3d 335 (1976) ..................................................................................... 11

*In re Apple & AT&TM Antitrust Litigation*,
  596 F.Supp.2d 1288 (N.D. Cal. 2008). ......................................................... 10

*In re Cal. Title Ins. Antitrust Litig.*,
  2009 U.S. Dist. LEXIS 43323 (N.D. Cal. 2009) .......................................... 18

*In re OnStar Contract Litig.*,
    600 F. Supp. 2d 861 (E.D. Mich. 2009)....................................................................15, 16

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009) ......................................................................2, 12, 13, 18, 19

*Krumme v. WestPoint Stevens Inc.*,
    238 F.3d 133 (2d Cir. 2000).............................................................................................8

*Limandri v. Judkins*,
    52 Cal. App. 4th 326 (1997) ....................................................................................2, 11

*Linear Technology Corp. v. Applied Materials, Inc.*,
    152 Cal. App. 4th 115 (2007) ......................................................................................19

*Marsikian v. Mercedes Benz USA, LLC*,
    2009 U.S. Dist. LEXIS 117012 (C.D. Cal. 2009).....................................................passim

*McKell v. Washington Mutual, Inc.*,
    142 Cal. App. 4th 1457 (2006) ....................................................................................20

*Mirkin v. Wasserman*,
    5 Cal. 4th 1082 (1993) .................................................................................................12

*Morgan v. Harmonix Music Systems, Inc.*,
    WL 2031765 (2009)...............................................................................................2, 3, 16

*Mourning v. Smithkline Beecham Corp.*,
    2009 U.S. Dist. LEXIS 25894 (N.D. Cal. 2009) ............................................................20

*Muslin v. Frelinghuysen Livestock Managers, Inc.*,
    777 F.2d 1230 (7th Cir. 1985) .......................................................................................9

*New Hampshire v. Maine*,
    532 U.S. 742 (2001)........................................................................................................9

*Oestreicher v. Alienware Corp.*,
    544 F.Supp.2d 964 (N.D. Cal. 2008) ...............................................................2, 3, 10, 16

*Rush v. Whirlpool Corp.*,
    2008 U.S. Dist. LEXIS 17210 (W.D. Ark. 2008).........................................................11

*Stickrath v. Globalstar, Inc.*,
    2008 U.S. Dist. LEXIS 12190 (N.D. Cal. 2008) ..........................................................12

*Ticconi v. Blue Shield of Ca. Life & Health Ins. Co.*,
  160 Cal. App. 4th 528 (2008) ........................................................ 20

*Tieman v. Red Top Cab Company*,
  117 Cal. App. 40 (1931) ................................................................ 16

*Williams v. Gerber Prods. Co.*,
  523 F.3d 934 (9th Cir. 2008) ........................................................ 19

*Watts v. Allstate Indem. Co.*,
  2009 U.S. Dist. LEXIS 26618 (E.D. Cal. 2009) ............................. 20

*Wilson v. Hewlett-Packard Co.*,
  2009 WL 3021240  (N.D. Cal. 2009) ............................................. 16

## **Statutes**

Cal. Bus. Prof. Code § 17200 ................................................................ 18

Cal. Civ. Code § 1760 ............................................................................ 10

I.       **INTRODUCTION**

The proposed class action now before the Court concerns 2006-2009 Toyota Prius vehicles that were sold with an optional (and more expensive) high-intensity discharge (HID) headlight system.  Plaintiffs allege that the HID headlight systems in these vehicles suffer from an inherent defect stemming from the Electronic Control Unit (ECU) and related circuitry, which do not properly interface with the bulbs to produce consistent headlight illumination.  As a result, the headlights in Plaintiffs' and class members' vehicles temporarily stop working while the vehicle is being driven, endangering the vehicle's occupants as well as others sharing the road.  Over a thousand Prius owners have lodged complaints with the National Safety Traffic Administration (NHTSA), and thousands more have posted complaints on the internet or contacted Toyota to complain of intermittent headlight failure.  Consumers are alarmed that their headlights are repeatedly shutting off while they drive, concerned for their safety, and remain upset that Toyota is not fixing—or even acknowledging—the defect in their vehicles.

Toyota has long known about the problem, but has chosen to sell Prius vehicles with the optional HID headlight system anyway.  Class members who purchased a Prius with an optional HID headlight system were not told that the headlights spontaneously shut off at repeated but unpredictable intervals, and so were both put at risk and deprived of the opportunity to make an informed choice whether to purchase the optional HID headlight system.  And when class members discovered the problem on their own, Toyota dealerships were either unable to correct the problem (because the headlights appeared to be working fine at the time) or charged class members for "repairs" that did not alleviate the root cause of the problem.

On behalf of all consumers who purchased a 2006-2009 Prius vehicle with the optional HID Headlight System, Plaintiffs' have brought this lawsuit against Toyota for violation of California's and other states' consumer protection laws.  They seek to hold Toyota liable for selling them Prius vehicles with the optional HID Headlight Systems while concealing that the headlights temporarily stop working while the vehicle is being driven, as well as for charging them for "repairs" that do not address the underlying defect.  Toyota answers that the alleged

HID Headlight System defect is a "business issue," not a legal one, and asks that the Court dismiss Plaintiffs' claims with prejudice and enter judgment in Toyota's favor.

Under California law, which Toyota agrees should be applied to all Plaintiffs' claims regardless of their state of residence, whether Toyota owed Plaintiffs and the class a duty to disclose information regarding the HID Headlight System depends on the materiality of that information. *See Limandri v. Judkins,* 52 Cal. App. 4th 326, 337 (1997). That is, if a hypothetical "reasonable consumer" would consider the information important in deciding whether to purchase the optional HID Headlight System information (as opposed to a standard Prius with halogen lights or another car altogether), then the information is considered material and must be disclosed prior to sale. *See In re Tobacco II Cases,* 46 Cal. 4th 298, 327 (2009). This issue of materiality is generally a question of fact, not subject to resolution on a motion to dismiss, "unless the fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it." *Id.* (internal quotation marks omitted).

In nonetheless urging dismissal as a matter of law, Toyota argues under a line of non-safety related defect cases, which began with California Court of Appeal decisions in *Daugherty v. American Honda* and *Bardin v. DaimlerChrysler*, and has since expanded through federal decisions interpreting California consumer protection law, such as *Oestreicher v. Alienware* and *Morgan v. Harmonix*. The consensus reached by the *Daugherty* line of cases is that no reasonable consumer would alter his or her purchasing decision based on the fact that a consumer product may not function properly after the manufacturer's warranty expires, and so a manufacturer has no duty to disclose that fact to consumers. Toyota acknowledges that Plaintiffs' First Amended Complaint does not make *Daugherty*-like allegations, but urges the Court to impute those allegations to Plaintiffs anyway and dismiss their case. (*See* Motion at 1 ("Although not expressly alleged, Plaintiffs apparently believed their HID headlights should operate … beyond Toyota's express warranty"); *id. at* 3 ("The real issue in this case . . . is that Plaintiffs are unhappy that their HID headlights did not last longer"); *id.* at 17 ("Plaintiffs

simply cannot contend that absent disclosure by a manufacturer, a reasonable consumer would not know that a headlight will eventually need replacement.")

The problem with Toyota's argument is that Plaintiffs do not contend that Toyota should have disclosed that the Prius's headlights might eventually burn out or need to be replaced (either within or outside of whatever warranty period Toyota believes applies). What Plaintiffs say Toyota was obliged to disclose is the safety implications of the optional HID Headlight System installed in Plaintiffs' Prius vehicles—namely, that the vehicles' headlights temporarily shut off during use. (*See, e.g.,* FAC ¶¶ 1-2, 21-22, 112-115.) The *Daugherty* line of cases are very clear that their holdings are not intended to excuse manufacturers from disclosing safety-related issues to consumers, which unlike the fact of possible post-warranty failures are very likely to influence a reasonable consumer's purchasing decision. *See Oestreicher v. Alienware Corp.* 544 F.Supp.2d 964, 970, n. 6 (N.D. Cal. 2008) (referring to the "*Daugherty* safety exception"); *Morgan v. Harmonix Music Systems, Inc.,* 2009 WL 2031765, *4 (citing *Daugherty* and *Bardin* for the proposition that a duty to disclose a known defect exists "when there are safety concerns associated with the product's use").

Toyota is well aware of the "*Daugherty* safety exception," and so after arguing that Plaintiffs' case should be dismissed under the *Daugherty* line of cases, it argues that the alleged HID Headlight System defect poses no safety risk. In fact, Toyota maintains that headlights that temporarily turn off during use are preferable to headlights in all other cars, as they are "signaling" the need for a repair or replacement. (*See* Def. Mem. at 20, n. 8.) Consumers disagree, and have voiced their safety concerns to NHTSA, Toyota, on the internet, and to Plaintiffs' counsel in the thousands. As Plaintiffs' allege in their complaint, the intermittent headlight problems caused by the HID Headlight System defect are far more dangerous than a the ordinary risk of a burned out bulb: the Prius's intermittent headlight problems are much more frequent; they occur repeatedly; they cannot be reliably detected or prevented through routine inspections or maintenance; and they are much more likely to affect both headlights, resulting in a total loss of headlight illumination. (FAC, ¶ 26.) If, as Toyota suggests, the Prius'

HID headlight system was uniquely designed to "signal" the need for a repair at frequent intervals, Toyota should have told consumers, who have no idea what is wrong, before selling them the optional HID headlight system. (*See id.*, ¶ 27.) And Toyota also should have told its dealerships, who often did nothing when a customer reported intermittent headlight problems, claiming that they could not duplicate the problem and the headlights appeared to be working fine. (*See id.*, ¶¶ 28, 37, 51.)

Whether or not the HID Headlight System defect poses an unreasonable safety hazard will undoubtedly be a central issue of this case. Plaintiffs believe they have the better end of the argument and that the answer is obvious: headlights that repeatedly and unpredictably shut off while the vehicle is being driven are not reasonably safe. But at this point in the litigation, the question for the Court is not who will prevail before a trier of fact, but whether Plaintiffs' complaint sets forth a plausible theory of liability against Toyota. *See Marsikian v. Mercedes Benz USA, LLC*, 2009 U.S. Dist. LEXIS 117012, *16-17 (C.D. Cal. 2009) (allegations of a defective air intake, which plaintiffs claimed left class vehicles susceptible to engine or electrical failure while driving, raised the plausible prospect of a safety problem and thus the plausible prospect of recovery under California consumer protection law). A review of Plaintiffs' complaint shows that it meets this pleading standard, and that Toyota's motion to dismiss should therefore be denied.

## II.     SUMMARY OF PLAINTIFFS' FACTUAL ALLEGATIONS

Plaintiffs and the class members they propose to represent each purchased or leased a 2006-2009 Prius with an optional high-intensity discharge (HID) headlight system. Consisting of an electronic control unit (ECU), a power circuit, switch assembly, bulbs and ballasts, and associated wiring and connectors, the "HID Headlight System" is supposed to illuminate a broader area of the road, last longer, and consume less power than Toyota's standard (and less expensive) halogen-based headlight system. (FAC, ¶¶ 19-20.) Plaintiffs allege, however, that the HID Headlight System in 2006-2009 Prius vehicles suffers from a defect that causes their headlights to behave in a very unusual and dangerous manner—far different from consumers'

past experiences and reasonable expectation for headlight performance. (*See id.*, ¶¶ 27-29, 35.)
One or both headlights temporarily shut off while the vehicle is being driven, resulting in a
partial or total loss of illumination and exposing Prius drivers and others on the road to
considerable danger. (*See id.*, ¶¶ 1, 21, 23.)

The sudden loss of headlight illumination has been a recurring problem for consumers
who purchased the Prius's optional HID Headlight System, resulting in a great deal of
confusion and concern. (FAC, ¶ 30.) Over one thousand members of Plaintiffs' proposed class
have lodged complaints with the National Highway Traffic Safety Administration (NHTSA),
including the following accounts:

> There is no pattern as to when [the headlight] works and doesn't, and often I do
> not know when the problem is occurring … Obviously, this is a safety concern….

> I have had to replace 3 of the headlights and 2 of the headlight modules at a cost
> of $1589.35 total. The headlights stop with no warning. This is a safety issue, as
> I drive at night with my children and grandchild….

> While driving approximately 65 mph at night, the headlights suddenly failed
> without warning. The driver experienced extremely limited visibility….

> While driving, the headlights would shut off unexpectedly and cause dangerous
> driving conditions. Initially, after activating the headlight switch, the headlights
> would illuminate again.  However, after two months, the headlights stopped
> working completely. The vehicle has been to the dealer numerous times. The first
> time, the dealer could not find any failures.…

> My passenger side HID headlight began to go out intermittently.  Flicking the
> light off and on restarted it.  On one occasion both went out at once while on the
> freeway in the rain---very scary. The dealer just changed the bulbs yesterday. The
> passenger side went out with in 10 minutes. When I flicked the lights on and off,
> it only stayed on for a few seconds.  Then today, it was dusk driving home, and
> the divers side went out. I now have no light.  This is a safety issue... My dealer is
> clueless on the cause.

> [B]oth headlights went out without warning. Could turn them off and on again,
> and they would work for about 90 seconds before one or both of them would fail
> again. Driving down the highway and being caught in pitch black for the few
> seconds necessary to turn my lights off then on again was not sustainable….

(*Id.*)  NHTSA opened a preliminary investigation, but with this lawsuit pending and after

receiving assurance that Toyota would conduct a customer service campaign, NHTSA opted not to order a formal recall. (*Id.*, ¶ 31.) In doing so, the agency was careful to stress that its decision not to implement a recall should not be considered a finding that the headlight problems were not a safety-related defect, and in fact, NHTSA has previously stated that wiring system problems that result in a loss of lighting *are* considered safety-related defects. (*Id.*)

Toyota has long known that the optional HID Headlight System suffers from intermittent headlight failures, through pre-release testing data as well as through the extremely high rate of warranty issues and consumer complaints that began streaming in soon after Toyota introduced the redesigned HID Headlight System as an option for the 2006 Prius. (*See* FAC, ¶¶ 2, 33.) Over the next several years, through the 2006-2009 model years, Toyota nonetheless continued to sell the lucrative headlight package as an option for the Prius, withholding from consumers its knowledge that the HID headlights behave very differently than how consumers expect. (*See id.*, ¶¶ 2, 34-36, 48, 112-113.) Toyota did not tell its customers about the widespread intermittent headlight failures associated with the HID headlights, and so did not give them an opportunity to choose whether to buy a Prius with Toyota's more reliable (and less expensive) standard headlight system, or another vehicle altogether. (*See id.*) Toyota even kept its dealerships in the dark, so when class members brought their car in after noticing intermittent headlight problems, Toyota dealers didn't know what to do and often just sent Prius drivers back on the road. (*See id.*, ¶¶ 40, 51, 64.)

Not long after the parties appeared before this Court for a status conference, Toyota sent a letter to the proposed class, informing them of a new Customer Support Program that implements rebates and price reductions for HID Headlight System replacement parts.[1] Previously, Toyota had begun providing financial assistance to consumers who called Toyota's corporate hotline directly to complain.[2] (FAC, ¶ 40.) But Toyota still refuses to acknowledge

---

[1] Plaintiffs have attached a copy of the letter sent to Mr. Collado for the Court's reference.

[2] The Prius cases now pending before Judge Highberger in Los Angeles County Superior Court concern this practice, which plaintiffs assert is a violation of California's Secret Warranty

any defect in the Prius's headlight system.  (*Id.*, ¶¶ 40-41.)  Instead, Toyota has consistently taken the position that all headlights burn out, and that headlight failure is a known and inevitable risk that drivers accept when operating any vehicle.  (*See id., ¶¶* 2, 24, 36, 40.)

The symptoms experienced and reported by thousands of Prius drivers is far different and far more dangerous than a burned-out bulb, however.  (*See* FAC, ¶¶ 25-26.)  The headlight failures caused by the HID Headlight System defect are much more frequent and unpredictable than a burned-out bulb.  (*Id.*, ¶ 26.) On consecutive trips, Prius owners may have total, sporadic, or no use of their headlights, with no pattern or predictability concerning when the headlights will function and when they will not.  (*See id.*, ¶¶ 26-27.)  And whereas routine inspections will reveal a burned-out bulb, the Prius's headlights evade detection by working normally when switched on only to sporadically shut off while the vehicle is on the road.  (*Id.,* ¶ 27.)  Even after Prius owners or lessees notice that one or both of their headlights have shut off, it often takes several occurrences before they are certain that something is wrong.  (*Id.*, ¶¶ 27, 77)  In between, the headlights appear to be functioning normally, both to consumers and to trained technicians.  (*Id.,* ¶¶ 27-28, 51, 64.)

The root cause of intermittent headlight failures in class vehicles is not in the bulbs but rather in the headlight system's Electronic Control Unit (ECU) and related circuitry, which does not properly control and interface with the bulbs to produce consistent headlight illumination.  (*Id.*, ¶¶ 3, 25.)  As a result, headlight failures from the HID Headlight System defect are much more likely to affect both headlights, resulting in a total loss of headlight illumination.  (*Id.*, ¶¶ 26, 29-30, 82.)  Toyota knows that the intermittent headlight failures affecting class vehicles are a result of a systemic defect, rather than simply burned-out bulbs, but has gone ahead and charged class members for relatively expensive HID bulb replacements that do not address the root cause of the problems.  (*See id.*, ¶¶ 28, 38-39, 112.)

---

Law.  Although Toyota's recently implemented Customer Support Program is not a secret, it offers fewer benefits than Toyota's secret program does, and so plaintiffs are likely to continue prosecuting their Secret Warranty claims in state court.

Class members thus continue to pay for serial repairs that still leave them prone to dangerous intermittent headlight failures.  (*See, e.g.*, *id.*, ¶¶ 30, 39, 44-47, 52-55, 73-74, 115.)

## III.   THE LEGAL STANDARD APPLIED TO PLAINTIFFS' COMPLAINT

In evaluating a complaint for purposes of a motion to dismiss, a trial court accepts the factual allegations in the complaint as true and construes all reasonable inferences in the light most favorable to plaintiffs.  *See Arar v. Ashcroft*, 585 F.3d 559, 567 (2d. Cir. 2009).  That standard is particularly crucial here, as Toyota repeatedly draws inferences and conclusions in *its favor* to support its motion to dismiss.  (*See, e.g.,* Mot. at 3 (inferring that Plaintiffs' "real" complaint is not that a serious safety-related problem was concealed from them, but that their headlights did not last longer and that replacement parts were "apparently costly"); Mot. at 18 (concluding that the HID Headlight System defect "is not more dangerous than the failure of regular headlights").)

Toyota's motion to dismiss should be denied unless the Court finds Plaintiff has not pled "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Or, stated another way, unless the Court is unable to draw the reasonable inference that Toyota is liable for the misconduct alleged.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

## IV.   PLAINTIFFS HAVE STATED A CLAIM AGAINST TOYOTA FOR VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT (CLRA).

Plaintiffs have alleged claims under California's Consumers Legal Remedies Act (CLRA) and Unfair Competition Law (UCL), as well as under the consumer protection laws of New York, Texas, Arizona, Massachusetts, Ohio, and Oregon.  (FAC, ¶¶ 118-124.)  The Court need not decide which consumer protection laws should apply to each plaintiff's claims, however, because both sides have assumed in their briefs that California law should govern all plaintiffs' claims.  *See Krumme v. WestPoint Stevens Inc.*  238 F.3d 133, 138 (2d Cir. 2000) (When both parties assume that one state's laws control, "such implied consent is sufficient to

establish choice of law.")[3]

A. **Plaintiffs' CLRA Claims Arise From Toyota's Failure To Disclose A Safety-Related Issue With The HID Headlight System—Not From Affirmative Misrepresentations.**

Toyota begins its argument for dismissal of Plaintiffs' CLRA claim by arguing that Plaintiffs have not specifically identified the "representations allegedly made by Toyota, or that Plaintiffs relied on any representations," as Rule 9(b) requires. (Mot. at 8.) But Plaintiffs do not allege that Toyota violated the CLRA through affirmative misrepresentations. Plaintiffs allege that Toyota violated the CLRA by failing to disclose and concealing material information from its customers before selling them a Prius vehicle with an optional HID Headlight System. *See, e.g.* FAC, ¶ 112 ("Toyota has failed to disclose and concealed from Plaintiffs and Class members that the optional HID Headlight System installed in their Prius vehicles is defective and intermittently stops working while the vehicle is being driven."); FAC ¶¶ 48, 56, 61, 65, 70, 75, 80, 87 ("Had Toyota informed [Plaintiffs] that the headlights in the optional HID Headlight System shut off intermittently, [Plaintiffs] would not have purchased a Prius with the HID Headlight System.").)

Toyota made the same representation-based argument in the motion to dismiss it filed before transfer to this District, only to acknowledge on reply that its argument did not apply to Plaintiffs' omission-based claim. *See Collado v. Toyota Motor Sales, U.S.A., Inc.*, No. 2:09-cv-03087, Doc. 18, at 18-19 (C.D. Cal., July 13, 2009) ("Clearly, those arguments were directed at what appeared to be allegations … that Toyota made certain representations concerning HID headlights. … However, Plaintiff is no longer alleging that Toyota made any

---

[3]     Toyota does attempt to reserve the right to change its mind later in the lawsuit and instead argue for the application of a different state or states' laws. (Mot. at 2, n. 1.) While it is easy to see why Toyota would want to reserve such a right, principles of judicial estoppel do not permit a party to change its position on choice of law depending on how the litigation is working out. *See New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (judicial estoppel prevents a party "from playing fast and loose" with the judicial system by altering its position whenever expedient); *Muslin v. Frelinghuysen Livestock Managers, Inc.*, 777 F.2d 1230, 1231, n. 1 (7th Cir. 1985) (acquiescence to the choice of one state's laws amounts to a waiver of the right to later object to the application of that state's laws).

representations regarding HID headlights.")  Plaintiffs do not know why Toyota has chosen to raise the argument anew in front of this Court, but the argument remains inapplicable to Plaintiffs' omission-based claim.  Plaintiffs are not required to specify a misrepresentation to allege an actionable omission under the CLRA and Rule 9(b).  They are only required to specify the substance of the alleged omission, the identity of the party responsible for the omission, and the injuries resulting from the omission, all of which Plaintiffs have done.  *In re Apple & AT &TM Antitrust Litigation*, 596 F.Supp.2d 1288, 1310 (N.D. Cal. 2008).

> **B.**     **Plaintiffs Have Pled Facts Giving Rise To A Duty To Disclose The HID Headlight System Defect.**

The CLRA is a consumer protection statute that is "liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection."  Cal. Civ. Code § 1760.  A plaintiff states a claim under the CLRA if he or she alleges that a defendant seller or manufacturer omitted a fact it was obliged to disclose in connection with the sale of a consumer good.  *Daugherty v. American Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 835 (2006).

Toyota spends a good deal of time arguing that under the rationale of *Daugherty* it had no duty to disclose that HID headlights might burn out.  (Mot. at 12-16, 20-21.)  The question here, however, is whether Toyota had a duty to disclose a known safety issue with its Prius vehicles:  that the headlights sporadically shut off while the vehicle is being driven.  When the appropriate legal analysis is applied to this question, it becomes clear that Toyota had a duty to disclose such highly material, safety-related facts.  *See, e.g., Falk v. General Motors, Corp.*, 496 F. Supp. 2d 1088, 1094 (N.D. Cal. 2007) ("*Daugherty* emphasized that an 'unreasonable' safety risk would lead to a duty to disclose."); *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 969 (N.D. Cal. 2008) (recognizing that *Daugherty* created an exception to its holding for "facts relating to product safety").

As Toyota acknowledges, California law imposes a duty to disclose in four principal

circumstances:

(1)     When the defendant is in a fiduciary relationship with the plaintiff;

(2)     When the defendant had *exclusive knowledge of material facts* not known to the plaintiff;

(3)     When the defendant *actively conceals a material fact* from the plaintiffs; or

(4)     When the defendant makes partial misrepresentations but also suppresses some material fact.

(Mot. at 11 (citing *Limandri v. Judkins*, 52 Cal. App. 4th 326, 337 (1997)) (emphasis added)); *see also, e.g., Goodman v. Kennedy*, 18 Cal. 3d 335, 347 (1976).

Under the facts set forth in Plaintiffs' complaint, Toyota was obliged to disclose to Plaintiffs and other Prius buyers that the vehicles' HID headlights temporarily shut off during use (i.e., the HID Headlight System defect) under the 2nd and/or 3rd "*Judkins*" scenarios. First, Toyota had exclusive knowledge of the HID Headlight System defect. (FAC, ¶¶ 22, 32-33.) Specifically, Plaintiffs allege that "[o]nly Toyota had access to information about the significant risk of intermittent headlight failure through its dealerships, pre-release testing data, warranty data, customer complaint data, and replacement part sales data." (*Id.*, ¶ 33); *compare Falk*, 496 F. Supp. 2d at 1096-1097 (finding allegations that only the defendant automaker had access to similar aggregate data sufficient to plead exclusive knowledge of a systematic defect); *Rush v. Whirlpool Corp.,* 2008 U.S. Dist. LEXIS 17210, *11 (W.D. Ark. 2008) (same, applying California law. Second, Plaintiffs allege that Toyota actively concealed the HID Headlight System defect by withholding information about the systematic nature of the headlight problems from both consumers and dealers alike, and by providing replacement parts to its dealers for use in repairs that provide, at best, a temporary solution, creating the false impression that any problems were unique cases. (FAC, ¶¶ 36-40); *compare Falk*, 496 F. Supp. 2d at 1097 (an automaker's replacement of defective parts with the same model can constitute active concealment of a systematic problem); *Marsikian v. Mercedes Benz USA, LLC*, 2009 U.S. Dist.

LEXIS 117012, *14-15 (C.D. Cal. 2009) (allegations that automaker extended secret "good will adjustments" to customers who complained loudly enough, without disclosing the full nature of the problem to the general public, indicated active concealment); *Stickrath v. Globalstar, Inc.*, 2008 U.S. Dist. LEXIS 12190, *9-11 (N.D. Cal. 2008) ("Plaintiffs' allegations that Defendant knew of material defects but did not disclose them to potential customers are sufficient to allege a duty to disclose under an active concealment theory.").

### C. The Fact That The Headlights In Class Vehicles Intermittently Stop Working While Being Driven Is A Material Fact.

#### 1. A Fact Is Material If It Would Be Considered Important To A Reasonable Consumer.

Toyota does not contest that Plaintiffs have adequately alleged exclusive knowledge and active concealment, but contends that this case does not fall within the second and third Judkins circumstances because Plaintiffs' have failed to allege a "material fact." A material fact is one that, if disclosed, would have caused a reasonable consumer to behave differently. *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1268 (C.D. Cal. 2007) (citing *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1093 (1993)); *In Re Tobacco II Cases*, 46 Cal. 4th 298, 327 (2009) (a fact is material "if 'a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question.'") (quoting *Engalla v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951, 977 (1997)).

Whether a fact is material is generally a question of fact not suitable for resolution at the pleadings stage. *In Re Tobacco II Cases*, 46 Cal. 4th at 327. The exception is when a fact "is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it." *Id.* (quoting *Engalla*, 15 Cal. 4th at 977). In *Daugherty*, for example, the Court granted a defendants' motion to dismiss upon finding the fact that an "engine might, in the fullness of time, eventually dislodge the front balancer shaft oil seal and cause an oil leak" to be immaterial as a matter of law. *See* 144 Cal. App. 4th at 838. Because the court found the fact to be consistent with what a reasonable consumer would expect, its

nondisclosure could not, as a matter of law, have deceived consumers or otherwise influenced their behavior.  *See id.*  Toyota claims that Plaintiffs have alleged it failed to disclose just such an "obviously unimportant" fact:  that the Prius's headlights might, in the fullness of time, eventually burn out and need to be replaced.  Toyota argues (correctly) that such a fact is immaterial as a matter of law because reasonable consumers know that "a headlight will eventually need replacement."  (Mot. at 17.)  But Plaintiffs are not claiming that Toyota should have told the class that the Prius's headlights might eventually need replacement.  The fact that Plaintiffs plead are material and should have been disclosed is that the Prius's optional and more expensive headlights shut off frequently and erratically, and in a manner that is difficult to detect and impossible to prevent.  (*See* FAC, ¶¶ 4, 25, 113.)  This highly unusual behavior by an essential safety feature of modern vehicles is neither known nor expected by consumers.  (*See id.*, ¶¶ 30, 35.)  Because a reasonable consumer informed of this safety-related fact would not have paid more for Toyota's optional HID Headlight System (instead opting for standard headlights or another vehicle altogether), it is considered a material fact under California law, and Toyota was not free to conceal it.  (*See id.*, ¶ 34, 115.)

>               **2.      Facts Related To Safety Are Deemed Material Under California Law.**

Toyota argues that the only way Plaintiffs can satisfy the materiality requirement is to plead that "the purchaser had a reasonable expectation that the defective part would last *the useful life of the vehicle*." (Mot. at 2; *see also* Mot. at 17 (emphasis added).)  The materiality standard set forth by the California Supreme Court in *Tobacco* and *Engalla* is clear, however, that a material fact can be *any* fact that a reasonable consumer would consider important in deciding whether to purchase a vehicle or optional vehicle component, not facts limited to an expectation that a part would last as long as a vehicle does.  Consumers care about more than just how long a product will last; they also care about, and have reasonable expectations about, how a product performs and how safe it is, among other things.  It is not surprising, then, that California courts have repeatedly found that safety-related facts can be material facts that would

undermine consumers' reasonable assumptions and expectations about a product, and therefore must be disclose prior to sale.

### (a)      *Falk v. General Motors*

In *Falk v. General Motors*, the plaintiffs accused defendant General Motors of failing to disclose that the automobiles' speedometer "ceased to function properly after the expiration of the vehicle's warranty."  496 F. Supp. 2d at 1092.  Thus, the issue was whether it could be material to a reasonable consumer "[t]hat a speedometer is prone to fail and to read a different speed than the vehicle's actual speed."  *Id.* at 1096.  Citing the importance of safety issues to a reasonable consumer, the court concluded that plaintiffs had satisfied the materiality requirement (subject to proof, of course) and therefore had stated a claim under the CLRA.  *See id.* ("Common experience supports plaintiffs' claims that a potential car buyer would view as material a defective speedometer…. Such a faulty speedometer easily would lead to traveling at unsafe speeds and moving violation penalties.")

### (b)      *Marsikian v. Mercedes Benz*

In *Marsikian v. Mercedes Benz*, the plaintiffs accused defendant Mercedes Benz of failing to disclose a defect in the air intake system of the automobiles.  2009 U.S. Dist. LEXIS at *1.  The air intake system was allegedly "susceptible to clogging," which could cause "substantial electrical failure," which in turn could cause traffic accidents.  *Id.* at *2-3. Mercedes Benz had argued that any such safety concern was purely speculative and that it would not have affected a reasonable consumer's decision to buy the car because consumers do not expect vehicle components to last forever.  *Id.* at *15-16.  The court disagreed, finding Mercedes Benz's contentions better suited to summary judgment.  *Id.* at * 16.  Since, in construing plaintiffs' allegations favorably to them, plaintiffs had alleged the "plausible prospect of a safety problem," the allegations of materiality were plainly sufficient to survive a motion to dismiss.  *Id.* at *16-17.

### (c)      *Cirulli v. Hyundai Motor Company*

In *Cirulli v. Hyundai Motor Company*, the plaintiffs accused defendant Hyundai of

14

failing to disclose the defect that the vehicles' sub-frame was susceptible to corrosion and, therefore, weakened structural integrity. 2009 WL 5788762, *3 (C.D. Cal. 2009). The deficient corrosion protection could allegedly cause a driver to lose control of a vehicle, though the only instance in which that happened came eight years (and more than 80,000 miles) after the car was purchased (the applicable warranty covered the vehicle for 60 months or 60,000 miles). *Id.* at *1. The court concluded that the plaintiff had nonetheless established materiality (at least at the pleading stage) because, had Hyundai adequately disclosed the omitted information about the vehicle's subframe, plaintiff alleged he would have been aware of it and behaved differently. *Id.* at *3.

### (d) *In re OnStar Contract Litigation*

In the *OnStar* MDL proceeding, the defendant automakers had failed to disclose to buyers of cars with OnStar—an in-vehicle communication system that provides automatic crash notification and other services—that the equipment would soon stop working unless owners paid for an upgrade. *See* 600 F. Supp. 2d 861, 863-64 (E.D. Mich. 2009). Plaintiffs alleged that the defendant automakers were obliged to disclose this information prior to selling class members their vehicles because the loss of OnStar and its safety protections would expose class members to "an increased risk of personal injury and harm." *Id.* at 870. The court found that plaintiffs had established the materiality of the omitted information, and thus stated a claim under the CLRA: "Plaintiffs' allegations concerning safety are sufficient… to enable it to survive a motion to dismiss under Rule 12(b)(6)." *Id.* at 871.

### (e) The *Daugherty* Line of Cases

Even those courts who have found materiality lacking, and have therefore dismissed omission-based CLRA claims at the pleading stage, have gone out of their way to indicate that the undisclosed facts did not concern consumer safety. *See Daugherty,* 144 Cal. App. 4th at 836 ("The complaint is devoid of factual allegations showing any instance of physical injury or any safety concerns posed by the [undisclosed] defect."); *Bardin v. DaimlerChrysler Corp*., 136 Cal. App. 4th 1255, 1270 (2006) (noting that "Plaintiffs did not allege any personal injury or

safety concerns" related to the undisclosed fact that the defendant automaker used tubular steel in its exhaust manifolds instead of the more durable cast iron); *Oestreicher*, 544 F. Supp. 2d at 970, n. 6 (referring to the "*Daugherty* safety exception"), 971-973 (finding that, unlike *Falk*, there plaintiff had made no showing of safety considerations, and declining to extend a manufacturer's duty to disclose to "a latent *non-safety* related defect in its product") (emphasis supplied); *Wilson v. Hewlett-Packard Co*., 2009 WL 3021240, *1  (N.D. Cal. 2009) ("the instant case does not implicate safety concerns"); *Morgan,* 2009 WL 2031765 at *4 (dismissing CLRA claim because "defendants are only under a duty to disclose a known defect in a consumer product when there are safety concerns associated with the product's use").

Even Toyota has acknowledged, in previous litigation, that an automaker owes a duty to disclose a safety-related defect.  *See Aberdeen v. Toyota Motor Sales, U.S.A.*, No. CV 08-1690 [Doc. 162], slip op. at 6 (C.D. Cal. June 23, 2009) (attached to Toyota's motion) ("Toyota suggests that the duty to disclose… is limited to cases involving a safety-related product defect.")

### 3.    Plaintiffs Have Adequately Pled A Safety-Related Defect.

Plaintiffs have adequately pled that the undisclosed HID Headlight System defect *is* safety-related and poses an unreasonable risk to consumers, as well as to other members of the public.  (*See* FAC, ¶¶ 1, 25-26, 29-30); *see also Tieman v. Red Top Cab Company*, 117 Cal. App. 40, 42-43 (1931) ("the purpose of lighted headlights is not only to warn a pedestrian of a vehicle's approach, but is also to enable its operator to see the pedestrian").  Plaintiffs respectfully submit that reasonable consumers would be equally wary—if not more concerned—of a defect that causes repeated and erratic headlight failure than they would of the defects in *Falk* (malfunctioning speedometer), *Marsikian* (air intake system susceptible to clogging), *Cirulli* (sub-frames susceptible to corrosion), or *OnStar* (potential for loss of automatic crash notification).  Notably, thousands of people are complaining about the manner in which the Prius's HID headlights behave; few if any people are making similar complaints about headlights simply going out over the passage of time.

Toyota disagrees with Plaintiffs and the thousands of consumers who have lodged safety complaints, and apparently intends to put on evidence that the alleged defect (which Toyota calls a "condition" in its recent letter to the class) poses no greater danger than ordinary headlights do.  (*See* Mot. at 20-21.)  Toyota cites the California and New York motor vehicle codes for the proposition that drivers have an obligation to check their vehicles' lights to ensure they are operating properly, meaning that headlight failure is a foreseeable and expected consequence of driving.  (*See id.*)  This argument ignores Plaintiffs' allegation that class members *cannot* reliably detect or prevent intermittent headlight failure, which is one reason the HID Headlight System poses an increased danger.  (*See* FAC, ¶¶ 26-27.)  Whereas routine inspections of a standard headlight will readily reveal a burned-out bulb, the HID headlights in class vehicles appear to be working fine when turned on, only to temporarily fail once the headlights have been on for a while and the driver is en route.  (*See id.*)

Toyota also apparently plans to argue at trial that the intermittent headlight failure that has so alarmed class members is actually a safety feature, since Toyota designed the headlights to temporarily stop working in order to "signal" the need for repair or replacement.  (*See* Mot. at 20, n. 8.)  For this argument to be successful, Toyota will have to explain why, if that is the case:  (a) Toyota didn't inform its customers of this unusual headlight behavior; (b) Toyota's Owners' Manual and sales literature don't mention this unique feature; (c) Toyota dealers didn't know about the feature; and (d) none of the other vehicles that use the same HID bulbs employ this feature or have drawn the volume of customer confusion and NHTSA complaints that the Prius's HID Headlight System has.

Plaintiffs believe the more plausible explanation is that Toyota has come up with this "signaling" explanation for intermittent headlight failure only to avoid liability and cover up what is really a fairly obvious safety defect.  But the Court need not decide now whether Plaintiffs are right that the HID Headlight System defect poses an unreasonable safety risk or whether Toyota is right that it does not.  As in *Marsikian*, that question is better left for summary judgment or trial, where evidence can be submitted and weighed.  *See* 2009 U.S. Dist.

LEXIS 117012, at *16; *see also In re Tobacco II Cases*, 46 Cal. 4th at 326-27. The facts alleged in Plaintiffs' complaint have established the plausible prospect of an undisclosed safety problem that would have affected a reasonable consumer's willingness to purchase Toyota's optional HID Headlight System, which is all that is required at this stage in the proceedings. *See Marsikian*, 2009 U.S. Dist. LEXIS 117012, at *16.

## V. PLAINTIFFS HAVE STATED A CLAIM AGAINST TOYOTA FOR VIOLATION OF THE UNFAIR COMPETITION LAW (UCL).

### A. Plaintiffs State A Claim Under Each Prong of the UCL.

The Unfair Competition Law (UCL) prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. Prof. Code § 17200. Accordingly, Plaintiffs' complaint states a claim under the UCL if it alleges facts tending to show that Toyota's conduct is *either* unlawful (i.e., forbidden by law), unfair (i.e., the harm to consumers outweighs any legitimate competitive benefit), or fraudulent (i.e., is likely to deceive members of the public). *See In re Cal. Title Ins. Antitrust Litig.,* 2009 U.S. Dist. LEXIS 43323, *30 (N.D. Cal. 2009). Plaintiffs have alleged that Toyota's conduct violates all three prongs of the UCL, but need only plead one violation to state a claim. (*See* Compl., ¶¶ 45-52.)

#### 1. Toyota's Conduct Violates The UCL's Unlawful Prong.

The UCL's unlawful prong "borrows" violations of other laws and treats them as independently actionable under the UCL. *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co*., 20 Cal. 4th 163, 180 (1999). Toyota's violation of the CLRA thus also constitutes an unlawful practice actionable under the UCL. *See Falk,* 496 F. Supp. 2d at 1098 ("[P]laintiffs successfully plead that GM violated the CLRA by breaching its duty to disclose information about its defective speedometers. Therefore … GM has committed an unlawful practice under the UCL.")

#### 2. Toyota's Conduct Violates The UCL's Fraudulent Prong.

In spite of its name, the UCL's fraudulent prong is "distinct from common law fraud. A common law fraudulent deception must be actually false, known to be false by the perpetrator

and reasonably relied upon by a victim who incurs damages. None of these elements are required to state a claim for injunctive relief under the UCL. This distinction reflects the UCL's focus on the defendant's conduct, rather than the plaintiff's damages, in service of the statute's larger purpose of protecting the general public against unscrupulous business practices." *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009) (internal citations and quotation marks omitted).

To establish that Toyota's conduct constituted a fraudulent practice under the UCL, Plaintiffs need only show that "members of the public are likely to be deceived." *Daugherty*, 144 Cal. App. 4th at 838. Common sense tells us that selling a vehicle with optional HID headlights without disclosing that those headlights sporadically stop working during use is likely to deceive consumers. (*See* FAC, ¶ 35 (a reasonable consumer expects and assumes that a vehicle includes safe and functional headlights and that a automaker will not sell vehicles with known safety defects without disclosing that defect)); *see also Falk* 496 F. Supp. 2d at 1098 (where an automaker has a duty to disclose the existence of a known safety defect to its customers, yet fails to follow through with it, "members of the public would very likely be deceived"); *contrast Daugherty*, 144 Cal. App. 4th at 838 (members of the public are not likely to be deceived by automaker's failure to disclose a non-safety related defect that it had no obligation to disclose).

Ultimately, whether Toyota's business practices are deceptive is a question of fact that requires consideration and weighing of evidence from both sides, and thus not ordinarily suitable for decision on demurrer. *See Linear Technology Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 134-35 (2007). Consumer surveys, anecdotal evidence, and expert testimony regarding consumer assumptions are often integral to the court's ultimate determination. *See Clemens v. DaimlerChrysler Corp.,* 534 F.3d 1017, 1026 (9th Cir. 2008). Because it is far from "impossible" that Plaintiffs will be able to present such evidence to support their allegation that a reasonable consumer was likely to be deceived by Toyota's conduct, this is not one of those "rare situations" where granting a motion to dismiss is appropriate. *Williams v. Gerber Prods. Co.*, 523 F.3d 934, 939 (9th Cir. 2008).

19

### 3.    Toyota's Conduct Violates The UCL's Unfair Prong.

"A business practice is unfair within the meaning of the UCL if it violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." *McKell v. Washington Mutual, Inc*., 142 Cal. App. 4th 1457, 1473 (2006).  This prong of the UCL is intentionally broad to give "courts maximum discretion to prohibit new schemes to defraud." *Ticconi v. Blue Shield of Ca. Life & Health Ins. Co.*, 160 Cal. App. 4th 528, 539 (2008).  To determine whether a business practice is unfair, the court must review the evidence from both parties and weigh any legitimate utility of the practice against the harm to consumers; this decision "cannot usually be made on demurrer." *See id.*

Here, Plaintiffs have alleged that Toyota engaged in and profited from practices that should be considered unfair and barred from a fair and efficient consumer marketplace:  selling Prius vehicles with optional HID headlights known to temporarily stop working while in use; and charging for "repairs" that do not address the root cause of the problem.  (*See* FAC, ¶ 112.) Upon review of all the evidence, these practices very well may prove to be contrary to public policy, immoral, unethical, unscrupulous, and/or substantially injurious to consumers, making a resolution of Plaintiffs' UCL claims in Toyota's favor inappropriate at the pleading stage.  *See Mourning v. Smithkline Beecham Corp*., 2009 U.S. Dist. LEXIS 25894, *12 (N.D. Cal. 2009) ("Failing to provide safety information is a practice that violates public policy."); *see also Watts v. Allstate Indem. Co.,* 2009 U.S. Dist. LEXIS 26618, *29-30 (E.D. Cal. 2009) (court could not conclude, as a matter of law, that defendants' conduct was fair where plaintiff alleged that defendants put consumers at risk by interfering with proper auto repair procedures).

## VI.    <u>CONCLUSION</u>

For the reasons stated above, Plaintiffs respectfully request that the Court deny Toyota's motion to dismiss in its entirety.  Plaintiffs' First Amended Complaint meets the plausibility standard applied at the pleading stage.  Its factual content raises the plausible prospect of an undisclosed safety issue with Toyota's optional HID Headlight System purchased by thousands of consumers, and thus raises the plausible prospect of recovery under California's consumer

protection laws.  An immediate dismissal of Plaintiffs' claims, as Toyota has requested, is therefore not appropriate.

DATED:  February 12, 2010                    Respectfully submitted,


                                             By:    /s/ Eric H. Gibbs

                                             Dylan Hughes
                                             Geoffrey A. Munroe
                                             **GIRARD GIBBS LLP**
                                             601 California Street, Suite 1400
                                             San Francisco, California 94104
                                             Telephone:  (415) 981-4800
                                             Facsimile:  (415) 981-4846

                                             Melissa M. Harnett
                                             Gregory B. Scarlett
                                             **WASSERMAN, COMDEN &**
                                             **CASSELMAN, L.L.P.**
                                             5567 Reseda Boulevard, Suite 330
                                             Post Office Box 7033
                                             Tarzana, California 91357-7033
                                             Telephone:  (818) 705-6800
                                             Facsimile:  (818) 345-0162

                                             Payam Shahian
                                             **INITIATIVE LEGAL GROUP, APC**
                                             1800 Century Park East, 2nd Floor
                                             Los Angeles, California 90067
                                             Telephone:  (310) 556-5637
                                             Facsimile:  (310) 861-9051

                                             Mike Arias
                                             **ARIAS, OZZELLO & GIGNAC LLP**
                                             6701 Center Drive West, Suite 1400
                                             Los Angeles, California 90045
                                             Telephone:  (310) 670-1600
                                             Facsimile:  (310) 670-1231

                                             Attorneys for Plaintiffs

 **TOYOTA**

Toyota Motor Sales, U.S.A., Inc.
19001 South Western Avenue
P.O. Box 2991
Torrance, CA 90509-2991



⁣⁣⁣⁣⁣⁣⁣⁣⁣⁣⁣⁣⁣⁣⁣⁣⁣⁣⁣⁣⁣⁣⁣⁣⁣⁣⁣⁣ BJJ

Carlos M. Collado
REDACTED

### 2006 through 2009 Model Year Prius
### HID Headlight Customer Support Program

VIN: REDACTED

Dear Toyota Owner:

At Toyota, we are dedicated to providing vehicles of outstanding quality and value. As part of our continuing efforts to deliver vehicles that meet our high standards, Toyota would like to inform you of a Customer Support Program available for your Toyota Prius vehicle equipped with the High-Intensity-Discharge (HID) headlight option.

### What is the condition?

Unlike halogen light bulbs which simply stop working at the end of their useful life, as the HID bulb nears the end-of-life it may exhibit a condition where the bulb may flicker or intermittently be inoperative. Toyota has received reports that during the diagnostic process for this condition, in addition to replacing the HID bulb, the HID headlight control ECU may also have been replaced to ensure that the intermittent operation was corrected. Upon further review of this condition, Toyota has determined that replacement of the HID bulbs is sufficient to curtail the intermittent operation and has voluntarily decided to reimburse customers who had their HID headlight ECUs replaced. Toyota apologizes for any associated inconvenience.

Toyota also received reports that the HID bulb price was not competitively priced with other Original Equipment Manufacturers (OEMs). To address this condition, Toyota has lowered the price of the HID bulb to $150/bulb (pre-sales tax price).

### Toyota cares about our customers

> To meet our high customer service standards, Toyota is announcing a Customer Support Program to provide reimbursement to you for payments made for repairs for the following:
> - The full cost of replacement of HID headlight control ECUs for 2006-2009 Prius vehicles.
> - The difference in cost between the original Prius HID bulb suggested retail price of $300 per bulb and the currently reduced suggested retail price of $150 per bulb (maximum value $150 per bulb).
>
> This offer is limited to your specific vehicle whose Vehicle Identification Number (VIN) is printed above and is subject to the same conditions set forth in your Owner's Warranty Information booklet, with the exception of this Customer Support Program. Damage incurred from abuse, a crash, vandalism and/or other impact is not covered by the New Vehicle Limited Warranty or this program. *Please note that this coverage is for customer paid work performed at an authorized Toyota dealer only.*

Spanish translation on back side
Traducción en español en el reverso

002-19749-18915-T66-P2

**What should you do?**

Although HID bulbs provide a longer lifespan when directly compared to traditional halogen headlight bulbs, we would like to provide some tips which may help you extend the life of the HID bulbs;

- As with traditional halogen bulbs, HID bulbs have a lifespan; the life of an HID bulb is affected by the number of hours it is in use. You can extend the life of HID bulbs by turning on headlamps only when necessary based on driving conditions and the motor vehicle laws applicable to the area in which you are driving.
- Your vehicle has a feature to automatically turn off your headlights when you turn off your vehicle and open the driver's door. This function prevents inadvertent battery drainage in the event the headlights are left in the ON position. You can extend the life of the HID bulb by always turning the headlight switch to the OFF position when not in use
- The greatest strain on HID bulbs occurs when the HID bulb is turned back ON while it is still hot. Consequently, you should minimize the number of times the HID headlamps are turned ON and OFF.

We hope these tips are useful to you. If you have any further questions, please see your Owner's Manual or contact any Toyota dealer for further information.

If you would like to update your vehicle ownership or contact information, please go to www.toyota.com/ownersupdate. You will need your full 17-digit Vehicle Identification Number (VIN) to input the new information.

**What if you have previously paid for the repair of your vehicle for this specific condition?**

If you previously paid to replace your HID headlight control ECU and/or paid for replacement of an HID bulb* ,please mail a copy of your repair order which includes the reason for the repair/replacement, proof-of-payment, and proof-of-ownership to the following address for reimbursement consideration **no later than March 31, 2010**:

Toyota Motor Sales, U.S.A., Inc.
Toyota Customer Experience, WC 10
19001 South Western Avenue
Torrance, CA 90509

*Toyota will reimburse you for the difference between the original Prius HID bulb suggested retail price of $300 per bulb and the currently reduced suggested retail price of $150 per bulb (up to a maximum value $150 per bulb).

Include your name, address, and telephone number(s) in your request. Please allow 4 to 6 weeks to process your request. In the event you no longer have your receipt, your Toyota dealership may be able to assist you in providing a duplicate copy.

We have sent this notice in the interest of your continued satisfaction with our products.

Sincerely,

TOYOTA MOTOR SALES, U.S.A., INC.

Spanish translation on back side
Traducción en español en el reverso